Andrew CARTER, Appellant,

v.

The STATE of Texas, Appellee.

No. 52550.

Court of Criminal Appeals of Texas.

March 30, 1977.

Rehearing Denied May 25, 1977.

Don W. King, Jr., San Antonio, for appellant.

Ted Butler, Dist. Atty., E. Dickinson Ryman, Sidney W. Cowan, Jr. and H. Wayne Campbell, Asst. Dist. Attys., San Antonio, Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

Carter was convicted under Article 1408 of the former penal code for the offense of robbery by assault. After the court assessed the enhanced punishment at life, Carter gave notice of appeal.

The sufficiency of the evidence is not challenged. On February 20, 1973, appellant and a co-defendant, Jones,[1] entered a jewelry store in San Antonio, and at gun point took from Elfriede Rhodes diamonds of the approximate value of between $70,-000 and $80,000.

Appellant contends that the court erred in admitting testimony at the guilt stage of the trial that he had been arrested in thirteen felony cases and that these had not resulted in convictions.

Appellant testified that he had pled guilty to two prior robberies. He said he did this because he was guilty of those offenses; that he pled not guilty to the instant offense because he did not commit the robbery. Appellant also judicially confessed to a shoplifting charge which was alleged to have occurred several months after the instant offense. Specifically, appellant was accused of stealing some men's suits from J. C. Penney's on July 10, 1973. He confessed to this to set up his defense that he was without funds shortly after he was alleged to have stolen some $70,000 to $80,000 worth of diamonds.

On direct examination he was also questioned about a separate burglary charge which was alleged to have occurred only three days after the diamond robbery. He testified to this to show his inability to make bail and further buttress the above-mentioned defensive theory. The following question was asked appellant concerning his detention for this separate burglary charge:

"Q. Okay. Now, that by no means—I want to make this clear to the jury—that was by no means the first time you had ever been in jail?

"A. No."

He urges that his testimony did not open the door to evidence of all of his arrests and that, by virtue of the preceding question and answer, he did not leave the jury with the impression that the offenses he testified about were "the total extent of his trouble with the law."

On cross-examination of the appellant the following occurred:

"Q. Have you ever been arrested for any other offenses besides the ones that you have testified about here today?

"A. Have I ever been arrested for any other charges?

"Q. Yes.

"A. No, sir, I haven't."

There was no objection to this questioning. The State later introduced the remaining extraneous arrests complained of.

1. This is a companion case to *Jones v. State,* No. 52,551, affirmed in a per curiam opinion March 30, 1977.

In *Nelson v. State*, 503 S.W.2d 543 (Tex.Cr.App.1974), we held that generally charges of offenses are inadmissible for impeachment purposes unless the charges resulted in final convictions for felony offenses or final convictions involving moral turpitude, none of which are too remote. However, we noted in *Nelson* an exception to this rule. The exception arises when the witness leaves a false impression of his "trouble" with the police. In that situation it is legitimate to prove that the witness had been "in trouble" on occasions other than those about which he offered direct testimony. Id., at 545; *accord, Reese v. State*, 531 S.W.2d 638, 641 (Tex.Cr.App. 1976). This contention is overruled.

Appellant next contends "[t]he trial court erred by allowing, over defendant's objection, the prosecutor to repeatedly and deliberately inform the jury that the defendant's wife had assisted in the prosecution of the case against the defendant."

In effect, he is contending that the State violated Article 38.11, V.A.C.C.P., which provides, in part: "Neither husband nor wife shall, in any case, testify as to communications made by one to the other while married."

Here is what happened. Appellant offered a newspaper clipping and it was admitted. This was a reproduction of a composite drawing of the two alleged robbers which had his wife's name on it. This occurred during cross-examination of Elfriede Rhodes, the complaining witness, when appellant's counsel offered the clipping into evidence as Defense Exhibit No. 1. The artist's sketch was based on Rhodes' description. Following its admission counsel asked and received permission from the court to show it to the jury. Before doing so an additional inquiry was made of the court as follows:

"MR. KING (Appellant's counsel): Your Honor, I just noticed that there are some names and phone numbers on here which apparently someone scribbled. I would ask that the jury be instructed to disregard it or have it covered. I didn't know there were some names on here."

Before the court could respond, appellant's counsel said: "That's all right, I'll withdraw that."

The clipping which was admitted contained the following notations:

"Vivian A. Carter    4–24–75        5:45 P.M.
W. L. Tefteller    4–24–75    Case #32625(73)"

The testimony of Detective Tefteller showed that he had interviewed a woman in his office on April 24, 1975, and that as a result of that interview he was able to assemble a photographic lineup which included a photograph of appellant. On April 29, 1975, Rhodes identified appellant from this lineup. Tefteller further stated that he and the woman had signed and dated the clipping. He was later recalled by the State and it was at this time that the question which is the basis of this ground of error arose. The prosecutor asked Tefteller:

"Q.  All right. Now do you know of your own knowledge the relationship, if there is any, between Vivian A. Carter and the Defendant in this cause, Andrew Carter?

"A.  They represented themselves as being man and wife."

Counsel objected as to any further questions from the prosecutor concerning any conversations with Vivian Carter. The court sustained the objection. He then objected on the basis of privileged communication and the court replied, "I'll sustain as to any hearsay." Appellant got all the relief he asked for. He did not ask for an instruction not to consider the answer. He is in no position to complain.

Appellant contends that this testimony allowed the State to do indirectly what it is prohibited by Article 38.11, V.A.C.C.P., from doing directly, showing that appellant's wife was assisting in the prosecution of the case even though she had not testified.

The complained of action in the instant case cannot be construed as the wife assisting in the prosecution of the husband as condemned in *Davis v. State*, 160 Tex.Cr.R.

138, 268 S.W.2d 152 (1954); *Davis v. State*, 140 Tex.Cr.R. 597, 146 S.W.2d 994 (Tex.Cr. App.1941), and *Johnigan v. State*, 482 S.W.2d 209 (Tex.Cr.App.1972).

In *Davis* (1954), the State had proved that the defendant's wife had gone to the home of a State's witness after midnight during the course of the trial and, as a result of her visit, the witness had come to testify, which testimony was in impeachment of what Davis had said while on the stand. When Davis' counsel objected the prosecutor said to the court: "We think that if the wife of this defendant comes and asks her to testify. . . ." Also, during closing argument, a statement was made by the prosecutor to which Davis' counsel objected on the ground that it was outside the record. Davis' wife, seated on the front bench in the courtroom, jumped up and verified the statement in a voice loud enough to be heard by both the court and jury.

In reversing Davis' conviction we held ". . . that it was improper for the State to prove that the appellant's wife was actively participating in securing witnesses to refute his testimony."

Further, we noted that "[i]n *Davis v. State*, 140 Tex.Cr.R. 597, 146 S.W.2d 994, we held that it was improper for the trial court to excuse the wife of the accused from the rule and permit her to sit at the counsel table with the district attorney and prompt him. We said that this was permitting the State to do indirectly what the statute prevented them from doing directly. We concluded that her active participation in the presentation of the State's case was tantamount to a denial by her of the truthfulness of the appellant's testimony." In *Johnigan v. State*, supra, the State called the name of Johnigan's wife as a witness during the trial. This Court held that this would have the effect of conveying to the jury that she would rebut his testimony if she were allowed to testify. That case is not in point.

■ In the instant case, appellant's wife merely identified a composite drawing which later appeared in the newspaper. As a result of her action a photographic lineup was assembled five days later from which the complaining witness identified appellant. Appellant had not been charged with the offense at this time. Carter's wife did not identify him in court, nor was her identification of the composite used in any manner to show his participation. Rhodes' in-court identification was relied upon by the State. The record does not contain any other facts which purport to show that his wife assisted in his prosecution.

■ Further, appellant's objection as to the hearsay of Tefteller's answer, "They represented themselves as being man and wife," was sustained. However, no objection was made during cross-examination of appellant when the prosecutor asked him if he was married to Vivian Carter. When testimony to the same effect as that objected to comes in without objection, error, if any, is made harmless. See *Hayles v. State*, 507 S.W.2d 213 (Tex.Cr.App.1974); *Owens v. State*, 503 S.W.2d 271 (Tex.Cr.App.1974), and 5 Tex.Jur.2d, Section 446, page 704.

In *Lockhart v. State*, 171 Tex.Cr.R. 648, 352 S.W.2d 749 (1961), the conviction was for driving while intoxicated. It was contended that reversible error was committed because statements made by defendant's wife to officers were permitted to go before the jury. Judge Morrison for the Court wrote:

"Since appellant permitted the testimony of the witness Oliver to go to the jury without objection, any error in permitting the officers to testify as to what appellant's wife told them was waived. *Andrews v. State*, 161 Tex.Cr.R. 550, 279 S.W.2d 331."

That holding is applicable to the present case.

The complained of testimony here relates to an act by appellant's wife, not the revelation of a communication between them. Nor is there any showing in this record of an attempt by the State to show that his wife would testify otherwise in order to impeach his testimony. There is no evidence of what Vivian Carter actually said to Tefteller.

The situation here is similar to that in *Grundstom v. State*, 456 S.W.2d 92 (Tex. Cr.App.1970), wherein we held it was not error for the trial court to admit into evidence certain burned clothes which Mrs. Grundstrom had turned over to police just after the robbery for which Grundstrom was convicted. There, as here, the wife did an act during the investigative stage of the offense.

Here, as in *Grundstom*, the complained of act does not amount to testimony of a communication between husband and wife as denounced by Article 38.11, supra. "The husband-wife privilege concerning testimony of communications applies to utterances and not acts. See McCormick & Ray, Texas Law of Evidence, 2d, Section 496: *Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435, and Wigmore on Evidence, 3rd Edition, Sec. 2237." *Grundstrom v. State*, supra, at page 93. In short, there is no showing of any communication between appellant and his wife. No reversible error has been shown.

The judgment is affirmed.

ROBERTS, Judge, dissenting.

The appellant offered a newspaper clipping into evidence and it was admitted by the trial court. This clipping was a newspaper reproduction of an artist's sketch of the two alleged robbers based on eyewitness description. Scrawled on the exhibit were the names of one Vivian A. Carter and one W. L. Tefteller. Nothing on the exhibit identified Vivian A. Carter as the wife of the defendant.

Detective Tefteller of the San Antonio Police Department testified that he interviewed a woman in his office on April 24, 1975. As a result of information received from this woman, Detective Tefteller put together a photographic lineup which included the photograph of the appellant. This was the lineup from which the complainant Rhodes identified the appellant on April 29, 1975.

Tefteller testified that both he and the woman he interviewed signed the newspaper reproduction of the artist's sketch.

On redirect examination, Detective Tefteller testified that to his knowledge Vivian A. Carter and the appellant were man and wife, and, over objection, that Vivian A. Carter was the woman he interviewed in his office that day.

When the prosecutor cross-examined the appellant, he established that on the date Vivian A. Carter went to Detective Tefteller's office the appellant and she were not on good terms. The conclusion of the prosecutor's cross-examination of the appellant was as follows:

"Q Smokey [appellant], isn't it a fact that your wife and you and Pam Moore and Claude Jones [co-defendant] all sat in a room and discussed this heist before it took place?

"A No, sir."

The disqualification of adverse spousal testimony cannot be waived. *Johnigan v. State*, 482 S.W.2d 209 (Tex.Cr.App.1972). Nor can the prosecution do indirectly what the statute [1] prevents them from doing directly. *Davis v. State*, 160 Tex.Cr.R. 138, 268 S.W.2d 152, 153 (1954). Thus, we stated in *Johnigan*, that:

"This Court has held that it is reversible error for the State to show that the defendant's wife is assisting in the prosecution of the case, even though she has not testified." (Citations). *Id.*, at 211.

I would sustain appellant's contention and reverse. The record reflects prosecutorial tactics designed to convey to the jury the impression that appellant's wife's testimony would have been harmful to his defense, and that she assisted in the prosecution of the case. Nor can I deem these actions harmless. Witness Rhodes identified appellant from a photographic lineup more than two years after the robbery. Witness Hardy viewed a live lineup on the same day, but could not positively identify appellant. Fingerprints were taken at the scene of the robbery, but none could be

1. Art. 38.11, V.A.C.C.P.

matched with the prints of either appellant or his co-defendant.

The judgment should be reversed and the cause remanded.