**Ex parte Andrew CARTER, Appellant.**

**No. 67149.**

Court of Criminal Appeals of Texas.

Sept. 23, 1981.

---

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

This is a post-conviction application for writ of habeas corpus filed pursuant to Art. 11.07, V.A.C.C.P.

Petitioner was convicted of robbery by assault on February 20, 1973. Punishment, enhanced by a prior conviction, was assessed at life. The conviction was affirmed on appeal in *Carter v. State*, 550 S.W.2d 282 (Tex.Cr.App.). One of the grounds of error advanced and rejected in that appeal, was that the court had erred in allowing petitioner to be impeached with evidence showing that he had been arrested in thirteen felony cases which had not resulted in convictions. Petitioner now contends the Court was in error with respect to the impeachment ground of error. He points to our subsequent decision in *Shipman v. State*, 604 S.W.2d 182 (Tex.Cr.App.), in which *Carter v. State*, supra, was overruled.

The rationale employed by the Court in petitioner's direct appeal was erroneous to the extent that it was held that misleading statements made by the defendant on cross-examination with regard to prior trouble with the law may be impeached with extraneous arrests. *Carter v. State*, supra at 284. Such a holding was properly overruled in *Shipman v. State*, supra. However, a review of the record in petitioner's direct appeal reflects that the correct result was reached on appeal. It is therefore unnecessary to reach the question of whether the issue presented here is an appropriate subject for collateral attack. Through his direct testimony at the time of his trial, petitioner gave a false impression of his criminal record.

On direct examination, petitioner testified as follows:

"Q. ... Are you telling this jury that you're as clean as the driven snow and that you have never done anything wrong or that you have never been in trouble?

"A. No, I'm not saying that."

Following this question and answer, counsel proposed to "get specific." Petitioner then testified that he had previously pled guilty to a charge of robbery by assault in 1967 and received a five year probated sentence. Petitioner related that he pled guilty to a second robbery charge in 1969 and received a sentence in the Texas Department of Corrections. Counsel then stated that he was "going to get into something that the District Attorney could not get into." Petitioner then testified that on February 23, 1973, he was arrested on a charge of burglary in San Antonio. Counsel then questioned petitioner concerning a pending theft indictment for an offense alleged to have been committed on July 10, 1973. With regard to the theft charge, petitioner testified: "Yes, sir. I made that crime, too." Finally, petitioner was asked the following questions:

"Q. And you know with *your record* what's going to happen to you.

When you do that, you'll serve time, right?

"A. Yes, sir.

"Q. So you're not saying you're clean, but you've done some things and you are willing to admit to those, correct?

"A. Yes, sir. I am willing to admit to the crime that I have committed." (Emphasis supplied.)

After petitioner testified, he called Daniel Sanchez, Jr., an identification officer with the Bexar County Sheriff's Department. Sanchez was questioned relative to booking records maintained at the county jail and petitioner's incarceration on February 23, 1973. On cross-examination, over objection, the prosecutor questioned Sanchez concerning the number of times petitioner had been arrested and booked into jail. Sanchez was permitted to state that petitioner had been booked on thirteen occasions and the reason for each of those incarcerations.

In *Reese v. State*, 531 S.W.2d 638 (Tex.Cr. App.), the defendant contended that the court erred in allowing the prosecutor to adduce before the jury evidence of an extraneous offense. The Court rejected the contention after stating that the defendant's direct testimony had created a false impression with the jury as to the extent of his previous "trouble with the law." The Court stated as follows:

"Generally, charges of offenses are inadmissible for impeachment purposes unless the charges result in final convictions for felony offenses or final convictions involving moral turpitude, none of which are too remote. *Ochoa v. State*, Tex.Cr. App., 481 S.W.2d 847. An exception arises when the witness, by his direct testimony, leaves a false impression of his 'trouble' with the police. In this situation, it is legitimate to prove that the witness had been 'in trouble' on occasions other than those about which he offered direct testimony. *Nelson v. State*, Tex. Cr.App., 503 S.W.2d 543; *Ochoa v. State*, supra." Id. at 640.

In the instant case, petitioner by his direct testimony admitted that he had previously been in trouble. Upon counsel's urging to "get specific," petitioner admitted to two prior robbery convictions. Petitioner then testified to his arrests on two extraneous offenses which had not resulted in convictions. Counsel then concluded this area of inquiry with a question framed in terms of a "record" and petitioner's willingness "to admit to the crime that I have committed."

Petitioner's direct testimony conveyed the distinct impression that his two prior convictions and two prior arrests constituted his entire "record," including convictions and arrests. The tenor of petitioner's direct testimony was that, except for those four instances, his "record" was clean.[1] Petitioner having "opened the door" to his "record" and presented a false impression of same is in no position to complain of the extraneous arrests presented by the State in an effort to correct that false impression.

While the rationale employed in petitioner's direct appeal was erroneous, the result of that appeal based on the record was correct. The relief sought is denied.

It is so ordered.

McCORMICK, Judge, concurring.

I join with Judge Tom Davis' opinion, but feel obligated to add a few observations.

The present situation is also legally and factually distinguishable from *Shipman v. State*, 604 S.W.2d 182 (Tex.Cr.App.1980). *Shipman*, overruling the language found in *Carter v. State*, 550 S.W.2d 282 (Tex.Cr. App.1977), is correct. However, the facts set forth in the *Carter* opinion are not the only relevant facts.

While such testimony was a defensive theory to the instant charge, it nevertheless reflected petitioner's record and was clearly an effort to present the extent of his prior criminal involvement.

1. Petitioner further testified that had he participated in the instant offense, involving the theft of $100,000.00 worth of diamonds, he would not have been involved in the pending theft charge, nor would he have waited four days to make bond on the pending burglary charge.

In *Shipman*, the defendant did not testify to his prior criminal record. However, by clever maneuvering, the prosecutor procured the defendant's denial of prior intoxication. Through this "set-up" on a collateral issue, the defendant's prior D.W.I. conviction was admitted for impeachment.

Unlike *Shipman*, the petitioner before us was not "set-up" on a collateral issue and then contradicted. Petitioner voluntarily testified to his prior criminal history—an incomplete history. On cross-examination, petitioner stated that his testimony on direct constituted a complete statement of his prior criminal record.

Finally, I find the case at bar analagous to the recent decision of the United States Supreme Court in *United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980). In *Havens*, the respondent and another man were searched by customs officers upon their arrival on a flight from Peru. Cocaine was found on McLeroth, who implicated Havens. A warrantless search of respondent Havens' luggage revealed a T-shirt from which cloth had been cut to make pockets for a T-shirt worn by McLeroth in which the cocaine had been found.

At trial, McLeroth testified that the T-shirt he wore containing cocaine in the makeshift pockets had been supplied to him by the respondent, who had sewed the pockets on the shirt. Respondent, testifying in his own behalf, denied having engaged in any activity with McLeroth. On cross-examination, the prosecution asked Havens whether he had anything to do with sewing the pockets on McLeroth's shirt. This he denied. The prosecution also asked whether he had a T-shirt with pieces missing in his luggage and whether the seized T-shirt was in his luggage, to which he answered, "Not to my knowledge."

The seized T-shirt, which had been suppressed prior to trial, was then introduced into evidence over respondent Havens' objections. Respondent contended that the impeachment (introduction of the illegally seized T-shirt) was improper on the ground that the matter had not been "covered on direct."

In upholding respondent's conviction, the Court held:

". . . that a defendant's statements made in response to proper cross-examination reasonably suggested by the defendant's direct examination are subject to otherwise proper impeachment by the government, albeit by evidence that has been illegally obtained that is inadmissible on the government's direct case, or otherwise, as substantive evidence of guilt." *Havens, supra*, at 627–628, 100 S.Ct. at 1917.

The Court said:

". . . In terms of impeaching a defendant's seemingly false statements with his prior inconsistent utterances or with other reliable evidence available to the government, we see no difference of constitutional magnitude between the defendant's statements on direct examination and his answers to questions put to him on cross-examination that are plainly within the scope of the defendant's direct examination. Without this opportunity, the normal function of cross-examination would be severely impeded." *Havens, supra*, at 627, 100 S.Ct. at 1916–1917.

Although *Havens* dealt with the use of evidence seized in violation of the Fourth Amendment, the language of the opinion relating to impeachment by use of otherwise inadmissible evidence was not limited.

In the case before us, petitioner, on direct examination, testified to two prior robbery convictions as well as prior arrests for burglary and theft. It cannot be said that the State then "smuggled in" questions concerning petitioner's other arrests in order to then impeach him. As noted in *Havens*, if the questions would have been suggested to a reasonably competent cross-examiner by direct testimony, they were not "smuggled in." See *Havens, supra*, at 626, 100 S.Ct. at 1916.

The cross-examination here grew out of petitioner's direct testimony concerning his prior criminal history, and the ensuing impeachment was proper for this reason as

well as that set forth in Judge Tom Davis' opinion.

ONION, Presiding Judge, dissenting.

It is well settled that when a defendant chooses to waive his privilege against self-incrimination by voluntarily taking the witness stand he is generally subject to the same rules as any other witness. He may be contradicted, impeached, made to give evidence against himself, cross-examined as to new matter, and treated in every respect as any other witness testifying in behalf of the defendant, except when some statute forbids certain matters to be used against, such as proof his conviction on a former trial of the present case or his failure to testify on a former trial or hearing. *Brumfield v. State*, 445 S.W.2d 732 (Tex.Cr.App. 1969); *Myre v. State*, 545 S.W.2d 820 (Tex. Cr.App.1977).

Mere arrests or charges of offenses are generally inadmissible for impeachment purposes. Normally the State cannot impeach a witness concerning his criminal record unless the charges have resulted in final convictions for felonies or other final convictions involving moral turpitude, none of which are too remote. *Ochoa v. State*, 481 S.W.2d 847 (Tex.Cr.App.1972). See also *Bustillos v. State*, 464 S.W.2d 118, 120 (Tex. Cr.App.1971), and cases there listed.

In *Ochoa* this court wrote:

"As to impeachment under Article 38.-92, Vernon's Ann. C.C.P., it must be remembered that the conviction must be a final one and must be for a felony offense or one involving moral turpitude, and even then it must not be too remote. See *Stephens v. State*, 417 S.W.2d 286 (Tex.Cr.App.1967) . . .

"An exception to the foregoing prevails, however, where the witness makes blanket statements concerning his exemplary conduct such as having never been arrested, charged or convicted of any offense, or having never been 'in trouble,' or purports to detail his convictions leaving the impression there are no others. *Stephens v. State*, supra; *Orozco v. State*, 164 Tex.Cr.R. 630, 301 S.W.2d 634 (1957),

and cases there cited. In such cases, the State may refute such testimony despite the nature of the conviction used or its remoteness. *Stephens v. State*, supra."

In *Nelson v. State*, 503 S.W.2d 543, 545 (Tex.Cr.App.1974), this court stated:

". . . The exception arises when the witness by his direct testimony. leaves a false impression of his 'trouble' with the police. In that situation it is legitimate to prove that the witness had been 'in trouble' on occasions other than those about which he offered direct testimony."

In *Nelson* the defendant on direct examination was asked, ". . . [H]ave you ever been in trouble?" This inquiry established that he had been convicted and placed on probation for "forgery and passing." The defendant was then asked, "Is that all of the trouble you have been in?" Nelson answered he had served 30 months in the pen as a result of a conviction for assault with a prohibited weapon. He then proclaimed his innocence of the robbery for which he was being tried. On cross-examination the prosecutor was permitted to ask about a number of arrests which had not resulted in final convictions. Such cross-examination was held proper under the exception to the general rule discussed above. See also *Alexander v. State*, 476 S.W.2d 10 (Tex.Cr.App.1972); *Heartfield v. State*, 470 S.W.2d 895 (Tex.Cr.App.1971); *Barnett v. State*, 445 S.W.2d 205 (Tex.Cr.App.1969). See also *Reese v. State*, 531 S.W.2d 638 (Tex.Cr.App.1976).

There is another rule that often comes into play. When a witness is cross-examined on a collateral matter, the cross-examining party may not then contradict the witness' answer. *Bates v. State*, 587 S.W.2d 121 (Tex.Cr.App.1979) (Opinion on Appellant's Motion for Rehearing); *Hatley v. State*, 533 S.W.2d 27 (Tex.Cr.App.1976); *Arechiga v. State*, 462 S.W.2d 1 (Tex.Cr. App.1971); *Gatson v. State*, 387 S.W.2d 65 (Tex.Cr.App.1965); 1 Branch's Anno.P.C., 2nd ed., § 200, p. 221.

Thus if a party cross-examines a witness on a collateral matter, the party is stuck

with the answer and cannot impeach that witness on that ground.

While the State may impeach a defendant or other witness with proof of final convictions for felonies or misdemeanor offenses involving moral turpitude, none of which are too remote, it cannot normally on cross-examination of a defendant or other witness ask about the numbers of arrests he has had and upon receiving a denial from the witness of the same then seek to impeach that witness with his arrest record. See and cf. *Shipman v. State*, 604 S.W.2d 182 (Tex.Cr.App.1980).

With the two rules and the exception to first in mind the instant habeas corpus application needs to be examined.

Petitioner Carter was convicted of robbery by assault and his appeal was affirmed in *Carter v. State*, 550 S.W.2d 282 (Tex.Cr. App.1977). One of the grounds of error rejected in that appeal was that the trial court had erred in allowing Carter to be impeached on cross-examination with evidence showing he had been arrested in 13 felony cases. Carter now contends this court was in error with respect to this impeachment contention. He calls attention to our subsequent decision in *Shipman v. State*, 604 S.W.2d 182 (Tex.Cr.App.1980), in which *Carter v. State*, supra, was overruled to the extent of any conflict with regard to the impeachment contention.

In *Carter v. State*, supra, it was written:

"Appellant testified that he had pled guilty to two prior robberies. He said he did this because he was guilty of those offenses; that he pled not guilty to the instant offense because he did not commit the robbery. Appellant also judicially confessed to a shoplifting charge which was alleged to have occurred several month after the instant offense. Specifically, appellant was accused of stealing some men's suits from J.C. Penney's on July 10, 1973. He confessed to this to set up his defense that he was without funds shortly after he was alleged to have stolen some $70,000 to $80,000 worth of diamonds.

"On direct examination he was also questioned about a separate burglary charge which was alleged to have occurred only three days after the diamond robbery. He testified to this to show his inability to make bail and further buttress the above-mentioned defensive theory. The following question was asked appellant concerning his detention for this separate burglary charge:

" 'Q. Okay. Now, that by no means—I want to make this clear to the jury— that was by no means the first time you had ever been in jail?

" 'A. No.'

"He urges that his testimony did not open the door to evidence of all of his arrests and that, by virtue of the preceding question and answer, he did not leave the jury with the impression that the offenses he testified about were 'the total extent of his trouble with the law.'

"On cross-examination of the appellant the following occurred:

" 'A. Have you ever been arrested for any other offenses besides the ones that you have testified about here today?

" 'A. Have I ever been arrested for any other charges?

" 'Q. Yes.

" 'A. No, sir. I haven't.'

"There was no objection to this questioning. The State later introduced the remaining extraneous arrests complained of.

"In *Nelson v. State*, 503 S.W.2d 543 (Tex.Cr.App.1974), we held that generally charges of offenses are inadmissible for impeachment purposes unless the charges resulted in final convictions for felony offenses or final convictions involving moral turpitude, none of which are too remote. However, we noted in *Nelson* an exception to this rule. The exception arises when the witness leaves a false impression of his 'trouble' with the police. In that situation it is legitimate to prove that the witness had been 'in trouble' on occasions other than those about which he offered direct testimony. Id., at 545; *ac-*

*cord, Reese v. State*, 531 S.W.2d 638, 641 (Tex.Cr.App.1976). This contention is overruled."

The *Carter* opinion held that whether Carter opened the door on direct examination or not that when he denied initially on cross-examination that he had not been arrested for other charges than those mentioned on the direct examination that the State was properly permitted to impeach him on his statement made on cross-examination.

In *Shipman v. State*, supra, in which *Carter* was overruled to the extent of conflict with the *Shipman* opinion, this court wrote:

"In *Carter v. State*, supra, the defendant was questioned on direct examination about various prior offenses, and then asked, in reference to a robbery-related detention:

"'Q. Okay, now that by no means—I want to make this clear to the jury— that was by no means the first time you have even been in jail?

"'A. No.'"

On cross-examination, the defendant was asked if he had ever been arrested for any offenses other than those enumerated on direct examination. When he responded that he had not, the State was allowed to introduce extraneous arrests. On appeal, the extraneous arrests were held admissible, relying on *Nelson v. State*, supra, and *Reese v. State*, supra.

"The circumstances in *Carter* cannot be distinguished from those in the present case: in both cases, the misleading statement which the State sought to contradict was made on *cross-examination*. However, we have concluded that *Carter* incorrectly relied on *Nelson*. *Nelson* correctly states that the exception to the general rule of inadmissibility applies when the defendant leaves a false impression of his past difficulties with the police on direct examination by his own counsel. The exception does not apply when the false impression is created by the State's cross-examination of the defendant. The State may not rely on its own questioning on cross-examination to

contradict the defendant and get in evidence collateral matters and evidence of convictions for other offenses which would otherwise be inadmissible. See *Hatley v. State*, 533 S.W.2d 27 (Tex.Cr.App.1976); *Els v. State*, 525 S.W.2d 11 (Tex.Cr.App.1975); *Roberts v. State*, [164 Tex.Cr.R. 260] 298 S.W.2d 599 (1957); *Bates v. State*, supra. *Carter* is overruled to the extent it is in conflict with this opinion."

*Shipman* makes clear that in both cases the misleading statement the State sought to contradict was made on cross-examination.

The majority concedes that the rationale employed in *Carter v. State*, supra, was erroneous to the extent it held that the misleading statements made by Carter on cross-examination may be impeached with extraneous arrests, and that *Shipman* properly overruled *Carter*. It then proceeds to hold that the right result was nevertheless reached on Carter's direct appeal. The majority reviews the record and concludes Carter gave a false impression of his criminal record on direct examination and thus the State's impeachment was proper after all. In its analysis the majority totally ignores the question asked early in the cross-examination of Carter about whether he was arrested for other offenses than those he had testified to on direct examination and his denial of any other arrests. This ignorance comes despite the fact that the *Carter* and *Shipman* opinions made clear that it was this misleading statement [denial of arrest] which the State later sought to contradict. Realistically the real impeachment came in the eyes of the jury when Carter in early cross-examination stated he had no other arrests than those mentioned on direct examination and then was shown to be lying. If this early cross-examination was immaterial under the circumstances, the majority should say so. The bench and the bar deserve nothing less.

If a defendant opens the door on direct examination and brings into play the exception to the rule that a party may impeach a witness only with final convictions for felo-

nies or ones involving moral turpitude, there is no question that the defendant or other witness may be impeached if this is all that exists.

If the defendant has not opened the door on direct examination so as to bring into play the aforesaid exception, and yet the State cross-examines the defendant on a collateral matter, the State is bound by the answer and cannot contradict the witness on that basis.

In either case the answer seems quite clear. Suppose, however, the question of whether the defendant has opened the door on direct examination so as to invoke the exception to the first rule is questionable, and the State on cross-examining the defendant on a collateral matter and having received an unfavorable answer, then seeks avoidance of being stuck with the answer by contradicting the misleading statement (answer) made on cross-examination, but asserts that all of this is proper because the defendant opened the door on direct examination. Can the issue involved be answered by simply ignoring the State's action on cross-examination? If a defendant has opened the door on direct examination, does this grant the State immunity from the second rule? The majority unashamedly chooses to side step these issues and pretend they do not exist, although they are clearly revealed.

In looking at the direct examination in question, it is observed that they are no blanket statement concerning Carter's exemplary conduct and no statements that the convictions and arrests were all the trouble he had been in with the law. In fact, appellant's counsel phrased several questions to be disclaimers that appellant was leaving that impression.

On direct examination, Carter denied participating in the instant robbery. The record reveals:

"Q ... Are you telling this jury that you're as clean as the driven snow and that you have never done any-

thing wrong or that you have never been in trouble?

"A No, I'm not saying that.

"Q Let me get specific with you. Do you recall on or about 1967, getting involved or being convicted rather, of some sort of robbery?

"A Yes, sir, I do."

Carter than stated he had been convicted of robbery in 1967 and placed on five years' probation; that in 1969 he had again been convicted of robbery, and that to both offenses he had pleaded guilty because he was guilty. The record then shows:

"Q Now, I'm going into something that the District Attorney could not go into. I'm going to ask you some questions about some other things.

"A Yes, sir."

Thereafter, Carter admitted that on February 23, 1973, three days after the instant robbery charge, he was arrested on a burglary charge, and was in jail for four or five days before he was able to make bail on credit through a relative of his mother.[1] The record then reflects:

"Okay. Now, that by no means ... I want to make this clear to the jury ... that was by no means the first time you had ever been in jail?

"A No."

Thereafter, the record reflects that appellant admitted that he had a pending shoplifting case in the court where he was being tried for robbery; that such case involved stealing some men's suits from J. C. Penney's on July 10, 1973; that he was going to plead guilty to the shoplifting charge because he was guilty of it. He was then asked:

"Q And you know with your record what's going to happen to you. When you do that, you'll serve time, right?

"A Yes, sir.

1. This was an obvious attempt to show that after the instant robbery he had no means to

make bond except on credit.

"Q So you're not saying you're clean, but you've done some things and you are willing to admit to those, correct?

"A Yes, sir. I am willing to admit to the crime that I have committed."

Thereafter, it was established again that appellant had pleaded guilty in the earlier robbery cases and would plead guilty in the shoplifting case because he was guilty of those offenses, but he was pleading not guilty in the instant robbery case because he was not guilty.

On cross-examination the State asked Carter if he had committed a robbery by assault on a man by the same of Joe Jasso. He answered, "I don't know what it's about." Later on cross-examination the prosecutor asked:

"Q Have you ever been arrested for any other offenses besides the ones that you have testified about here today?

"A Have I ever been arrested for any other charges?

"Q Yes.

"A No, sir. I haven't."

After Carter testified, he called Daniel Sanchez, Jr., an identification officer with the Bexar County Sheriff's office and custodian of the booking records at the county jail. Sanchez was questioned about Carter's incarceration on February 23, 1973, on the burglary charge. On cross-examination the State elicited from Sanchez that Carter had been booked into jail on 13 occasions and the reasons for each of those incarcerations.

This testimony directly contradicted and impeached petitioner Carter as to his negative answer on cross-examination as to whether he had been arrested on any other charges than those mentioned. If only the cross-examination was before us there would be no question but that reversible error occurred. *Shipman v. State*, supra.

Did the direct examination open the door or leave a false impression about Carter's criminal record so as to authorize impeachment despite the State's action in eliciting the above described negative action?

On direct examination Carter clearly stated he was *not* saying he had never been in trouble before. He acknowledged two robbery convictions, and for various reasons of defense strategy testified to burglary and shoplifting charges. He sought to make clear that his confinement in jail was not his first time in jail. Did this leave a false impression that only those matters inquired about constituted Carter's entire criminal record? There certainly were no "is this all of the trouble" type questions on direct examination.

The majority cites *Reese v. State*, 531 S.W.2d 638 (Tex.Cr.App.1976), with approval. In this aggravated robbery case Reese was asked on direct examination:

"Q Mr. Reese, you have had trouble with the law before, haven't you?

"A Yes, sir.

"Q What kind of trouble do you have with the law?

"A On a car theft I have."

On cross-examination the prosecutor proceeded to question Reese about convictions for misdemeanor theft, carrying a pistol, and felony unauthorized use of an automobile, and the arrest and charge for unauthorized use of an automobile.

The *Reese* opinion stated:

"Appellant's response to his counsel's question relative to his 'trouble with the law' was that he had plead guilty to a car theft case. While counsel did not ask if this was all the trouble he had been in, appellant's failure to relate any other instances clearly left the impression with the jury that this was the extent of his 'trouble with the law.' Having opened the door to his 'trouble with the law,' appellant is in no position to complain of the prosecutor's inquiry relative to the arrest and charge for unauthorized use of an automobile. *Nelson v. State*, supra." [2]

2. *Nelson v. State*, 503 S.W.2d 543 (Tex.Cr.App. 1974), involved two questions on direct examination. The first, ". . . [H]ave you ever been in trouble before?" which elicited a conviction for

Whatever the correctness of the *Reese* result, the above quoted language paints with a broad brush and is easily subject to misinterpretation. I am not prepared to hold that whenever a defendant on direct examination mentions an arrest for an offense other than that for which he is on trial that regardless of the circumstances he must relate all other arrests on direct examination or face impeachment by the State with his arrest record regardless of a further laying or strengthening of the predicate for impeachment by the State on cross-examination.

In my opinion Carter did not open the door on direct examination, and the State, having interrogated him about a collateral matter on cross-examination was bound by his answer, erred in contradicting him with his arrest record. Such action was error. *Shipman v. State*, supra. I would grant petitioner Carter the relief requested. I dissent to the action of the majority.

ROBERTS and TEAGUE, JJ., join in this dissent.

CLINTON, Judge, dissenting.

Yesterday it was *Bell v. State*, 620 S.W.2d 116 (Tex.Cr.App., Opinion on Rehearing, delivered July 22, 1981). Today it is the case at bar. Together they toll the knell of exercise of significant portions of constitutional right afforded the criminally accused. The citizen who invokes "the right of being heard"[1] in the sense of testifying in his own defense places himself in harm's way by bringing up the subject of his past misconduct, for every word used by his trial attorney in framing a question and every word uttered by him in response will be translated into nuances of "impression" and "tenor" the prosecution claims its cross examination was designed to correct. Thus

in jeopardy is the quite legitimate defensive effort to soften the effect of a prior criminal record by exposing it first.

Therefore, I would be content to join the Dissenting Opinion, as I do, without comment, but for the tortuous undertaking by the Concurring Opinion to import the rationale of *United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980) into the impeachment jurisprudence of this State. What the five Justices in the majority were about may be gleaned from the statement of the question[2] and the discussion immediately preceding the holding excerpted by the Concurring Opinion in the following sentences:

"We also think that the policies of *the exclusionary rule* no more bar impeachment here than they did in *Walder* [*v. U.S.*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503], *Harris* [*v. N.Y.*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1], and [*Oregon v.*] *Hass* [420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570]. In those cases the ends of the exclusionary rule were thought adequately implemented by denying the government the use of the challenged evidence to make out its case in chief. The incremental furthering of those ends by forbidding impeachment of the defendant who testifies was deemed insufficient to permit or require that false testimony go unchallenged, with the resulting impairment of the integrity of the fact finding goals of the criminal trial. We reaffirm this assessment of competing interests and hold ..."

*Havens*, supra, at 627, 100 S.Ct. at 1917.

Suffice to say that we are not here concerned with the constitutional exclusionary rule pertaining to suppressed evidence, and what the majority was explaining in the paragraph from which the second quotation

"forgery and passing," and the second, "Is this all the trouble you have been in?" elicited a conviction for assault with a prohibited weapon. *Nelson* is a far stronger case than *Reese*.

1. Article I, § 10, Bill of Rights, Constitution of the State of Texas.

2. "[W]hether evidence *suppressed as the fruit of an unlawful search and seizure* may nevertheless be used to impeach a defendant's false trial testimony given in response to proper cross-examination, where the evidence does not squarely contradict the defendant's testimony on direct examination." *Havens*, 446 U.S. at 621, 100 S.Ct. at 1913–1914. (All emphasis is mine unless otherwise indicated.)

in the Concurring Opinion was taken is that the reasoning of *Harris* and *Hass*—both involving impeachment of assertedly false testimony first given on cross examination —"controls this one," that is, *Havens*. Thus, the majority saw "no difference of constitutional magnitude" in the otherwise different situations. No doubt this Court will assay the *Havens* answer to the question it poses when properly presented, but today we have not done so.