**Pedro P. MARTINEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 04–84–00026–CR, 04–84–00027–CR.**

Court of Appeals of Texas,
San Antonio.

March 6, 1985.

Rehearing Denied April 2, 1985.

Warren Weir, San Antonio, for appellant.

Sam Millsap, Jr., Criminal Dist. Atty., Ronald E. Mendoza, Jody Tullos, Edward F. Shaughnessy, III, San Antonio, for appellee.

Before ESQUIVEL, BUTTS and REEVES, JJ.

## OPINION

ESQUIVEL, Justice.

These are appeals from a conviction for aggravated robbery and from a conviction for aggravated kidnapping.

Appellant was indicted for each of the above designated offenses in separate indictments and under separate case numbers on the docket of the trial court. The parties agreed to try both cases together. Upon appellant's plea of guilty to the offense charged in each of the indictments, a jury found him guilty of the offense charged in each of the indictments and assessed his punishment for aggravated robbery at fifteen years' confinement and for aggravated kidnapping at twenty-five years' confinement. Appellant raises the exact same two grounds of error in each appeal. Since our consideration of appel-

lant's grounds of error in each appeal will be dispositive of both appeals, we have consolidated both appeals into this one opinion.

In his first ground of error appellant presents us with the issue of whether the trial court erred in permitting the testimony as to an extraneous offense during the punishment phase of the trial. In his second ground of error appellant presents us with the issue of whether the trial court erred in failing to obtain a written jury waiver from him during the plea phase of the trial. We answer both issues in the negative and affirm the judgments of conviction in both cases.

## EXTRANEOUS OFFENSE

Following his plea of guilty and the introduction of evidence for the State, the appellant took the stand in his own behalf and the following took place during the cross-examination of appellant by the prosecutor, Ms. Tullos:

"Q: (By Ms. Tullos) Did you try to help Mr. Pisano by allowing him to escape this situation?

"A: (By Appellant) No, ma'am.

"Q: You didn't do anything to help him?

"A: No, ma'am.

"Q: Now, when you realized that Mr. Pisano escaped and ran into the convenience store in Campbellton you and Bob ran?

"A: Yes, ma'am.

"Q: If you were so concerned about cooperating with him, why didn't you stay there and wait for the law enforcement people to get there?

"A: Well, I got scared.

"Q: You got scared?

"A: Yes, ma'am.

"Q: Scared of what?

"A: That was the first time I had been busted, you know.

"Q: That's the first time you had been busted?

"A: Yes, ma'am.

"Q: Are you sure that was the first time you had ever been arrested for anything?

"A: Yes, ma'am.

"MS. TULLOS: Your Honor, may we approach the Bench?

"THE COURT: Okay.

"WHEREUPON, a conference was held at the bench outside the hearing of the Court Reporter and the Jury.

"THE COURT: Members of the Jury, if you will follow the Bailiff, he'll put you in the juryroom for a couple of minutes.

"WHEREUPON, the Jury was excused from the courtroom.

"THE COURT: You may confer with him, if you want to. Just sit with him there and just talk to him privately for a few minutes.

RECESS

"WHEREUPON, at this time, a recess was had afterwhich the following proceedings were had as follows:

"THE COURT: Okay. Go ahead.

"MR. WEIR: Your Honor, my client is now prepared to admit that he gave that answer because he was nervous and that he is prepared now to say that he has been arrested before.

"Under those circumstances, I think you cured [sic] the prejudicial effect of asking him what the offense was he's been arrested for. Especially since there's been no final conviction on it. I think it's just an effort to inject prejudice in the case at this point if he's willing to admit he's been arrested for it.

"THE COURT: So you're going to—

"MR. WEIR: I don't think there is any probative value served by having the nature of the offense, especially when there's been no conviction.

"THE COURT: So you're objecting to the State attempting to impeach him with another arrest in Dallas County or whatever it is?

"MR. WEIR: That's right.

"THE COURT: Whatever the arrest is?

"MR. WEIR: He's now prepared to say he has been arrested before.

"THE COURT: Okay. Your objection is overruled. I'm going allow them to ask the question.

"MR. MENDOZA: Judge, for the benefit of the record, the State's question will be: 'Is it true that you are the same person who was arrested in Dallas County, Texas on July 1st, 1980 for the offense of sexual abuse against a child?' That's going to be our question.

"THE COURT: Okay.

"MR. WEIR: And I object to that question because it's prejudicial without any probative value in the sense that you can get the same admission from him by asking if he's ever been arrested before without getting into harmful material of what it was for. Especially since there has been no final conviction.

"THE COURT: Your objection will be overruled, Counsel.

"All right. Are you ready to proceed?

"MR. WEIR: Yes, Your Honor.

"THE COURT: Let's put the jury back in the box.

"WHEREUPON, the following proceedings were had in the presence of the Jury.

"THE COURT: You may proceed, Counsel.

"QUESTIONS BY MS. TULLOS:

"Q: Mr. Martinez?

"A: Yes, ma'am.

"Q: Are you the same person that was arrested in Dallas County, Texas on July the 1st of 1980 for the offense of sexual abuse—

"MR. WEIR: Just a minute. I want to object to that question being asked. Because he's already testified, without being controverted, he's never been convicted of a felony in this state or any other state. And the object of that question is just to introduce prejudice into this trial at this time.

"THE COURT: Your objection is overruled, Counsel.

"QUESTIONS BY MS. TULLOS:

"Q: Are you the same person?

"A: Yes, ma'am.

" * * * * "

Appellant does not complain of the admission of his previous arrest in Dallas County. His objection is directed to the fact that the State did not limit itself to the fact of the prior arrest but instead was permitted to inquire as to the nature of the offense for which he was arrested. He contends that the introduction of the testimony of a sex offense was temporally and logically unrelated to the offenses which were the gravamen of the State's cases; that it was calculated to inflame the minds of the jury and of no probative value to the case in chief. He theorizes that it was of such an inflammatory nature that the jury, being morally offended by sex crimes, may have punished him not only for the crime charged but also for the prior offensive act for which he was only arrested. Appellant refers to the fact that even though no evidence of any prior record making him deserving of a harsh sentence was offered, the jury assessed terms of fifteen years and twenty-five years, respectively. Appellant argues that the jury's assessment of these lengthy sentences must have been affected by its knowledge of his sex charge. We refuse to engage in such conjecture. We agree with the State that this was a legitimate avenue of cross-examination which was precipitated by appellant's attempt to mislead the trier of fact with respect to his past criminal history.

■ Rules regarding impeachment of witnesses are fully applicable when it is a defendant testifying. He can be questioned on possible extraneous offenses even if those extraneous offenses have not been reduced to a final conviction when by his testimony, either on direct or cross-examination, he leaves a false impression with respect to his prior criminal record. *Baxter v. State,* 645 S.W.2d 812, 816 (Tex.Crim.App.1983). In our opinion, appellant's testimony that he "got scared" and ran because he had never been arrested was a clear attempt to leave a false impression as to his prior criminal record with the

jury. Accordingly, we hold that the State had a right to inquire about appellant's arrest in Dallas County on July 1, 1983, for the then offense of sexual abuse. Ground of error number one is overruled.

## JURY WAIVER

■ In support of his contention that fundamental error is present which requires reversal due to the absence of a written jury waiver, appellant asserts that it is clear from the record that the trial court and not the jury found him guilty. Our review of the record leads us to the opposite conclusion. The court's charge, which is contained in the record, clearly shows an instruction to the jury by the court to find appellant guilty of the offense charged in the indictments and to assess his punishment. The verdict form, also included in this record, clearly reads that the jury found appellant guilty of the offense charged in the indictment in each instance.

When appellant entered his plea of guilty before the jury the only issue to be decided by them was the issue of punishment to be assessed; however, this does not mean that they could not return a verdict of guilty. We, therefore, hold that a written jury waiver was not required. Appellant's ground of error number two is without merit and is overruled.

The judgment of conviction in each case is affirmed.

BUTTS, Justice, dissenting.

I respectfully dissent.

As noted by the majority, when a defendant chooses to waive his privilege against self-incrimination by voluntarily testifying, he is generally subject to the same rules as any other witness. *Ex parte Carter,* 621 S.W.2d 786, 790 (Tex.Crim.App.1981). But the State cannot normally on cross-examination of a defendant or other witness ask about the numbers of arrests he has had and upon receiving a denial from the witness seek to impeach him with his arrest record. *Id.* at 791. [These statements of

law are found in the dissent]. The *Carter* majority found that it was the direct testimony of Carter which "opened the door," permitting the State's impeachment questions on cross-examination. The general rule of inadmissibility for impeachment purposes is that charges of offenses are not admissible unless the charges resulted in final convictions for felony offenses or final convictions involving moral turpitude, none of which are too remote. The exception to the general rule of inadmissibility applies when the defendant leaves a false impression of his past difficulties with the police on *direct examination* by his own counsel. The exception does not apply when the false impression is created by the *State's cross-examination* of the defendant. The State may not rely on its own questioning on cross-examination to contradict the defendant and get in evidence collateral matters and evidence of convictions for other offenses which would otherwise be inadmissible. *Shipman v. State,* 604 S.W.2d 182, 184–85 (Tex.Crim.App.1980). The exception to the general rule as stated in *Shipman* and the cases cited therein thus appear to have been enlarged by *Carter, Baxter v. State,* 645 S.W.2d 812, 816 (Tex.Crim.App.1983) would take this exception a step farther, by stating that impeachment *should* not be limited solely to the witness' assertions on direct examination.[1] In that case, however, the court noted the evidence of impeachment did not constitute an extraneous offense, and further, the trial court sustained the objections of the defendant, and no further proof was permitted.

In the present case appellant argues a narrow issue which is not addressed in any of the cases cited: whether the trial court should have permitted him to admit that he had been previously arrested in order to explain his statement made just minutes before on cross-examination by the State.

It is significant that appellant did not testify on direct examination that he had never before been arrested. Counsel for appellant immediately offered to put before the jury the appellant's admission that his statement was incorrect. He pointed out the prejudicial effect of the State's question if the court allowed it: whether appellant had been arrested for sexual abuse. Appellant explained he was nervous and the evidence clearly shows he is in a below-normal intelligence range. It goes without saying that the offense could not otherwise be proved by the State in its case; in fact it was of no probative value and immaterial to the proof.

The purpose of permitting the State to impeach the defendant-witness when he "opens the door" by creating a false impression of his arrest record is to cast doubt on his veracity and to place before the jury the truth. In this case, *before* the State asked the question, appellant *immediately* offered an explanation of the statement and offered to tell the jury he had been arrested previously, thus correcting the false impression. The admission would have displayed to the jury that a falsehood had been stated by appellant and that he had indeed been arrested before. More importantly, the prejudicial effect of the subject of the arrest would have been avoided.

The trial court overruled appellant's objection and did not permit him to make the statement. The State was then permitted to ask the question. The jury heard what the offense was but did not learn that appellant had requested to correct the statement he made to them. Rather, their impression must have been that appellant lied purposefully and was "caught" by the State in that lie.

In this case due process, as well as one of the purposes of trial—to arrive at the truth without subterfuge—would have best

---

**1.** The *Baxter* opinion (one concurrence, three dissents, one not participating) does not hold that it abolishes or modifies the prevailing rule that the defendant must have opened the door on *direct examination,* thereby permitting the exception to come into play upon cross-exami-

nation by the State. The opinion recognizes the *Ex parte Carter* and *Shipman* restrictions on the exception and simply states the exception to the rule *should* not be limited solely to the witness' assertions on direct examination. Thus *Baxter* does not overrule the restrictions.

been served by permitting appellant to correct *immediately* his erroneous statement as he requested to do. Texas cases and law have not addressed this particularized situation. The instant case is distinguishable from the other "false impression" cases. Under these facts, I would reverse.