**1**

Albert Roman CASTRO, Appellant,

v.

STATE of Texas, Appellee.

No. C14–81–821–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 10, 1982.

John R. Froeschner, Galveston, for appellant.

James F. Hury, Jr., Dist. Atty., Galveston, for appellee.

Before MILLER, MORSE and JAMES, JJ.

MILLER, Justice.

Appellant was convicted by a jury of murder after a plea of not guilty. The trial court assessed punishment at fifteen (15) years confinement in the Texas Department of Corrections and appellant gave notice of appeal. We now reverse the judgment of the trial court because of the improper comments of the State's attorney at trial. We hold the actions of the State during the prosecution of the case were of the kind to deprive the appellant of a fair and impartial trial, and that the court erred in not granting the timely motions for new trial.

Appellant was charged with committing a gun-shot murder in Galveston, Texas in the early morning of July 24, 1981. July Cross, the State's primary witness, testified

she was sleeping with her boyfriend, Hershel Thompson, the deceased, on the living room sofa in her apartment. Ms. Cross testified she was awakened by a knock at her apartment door by a person identifying himself as "Albert." She opened the door to find appellant, a neighbor, standing in the outer hall. According to her testimony, appellant asked her whose car was parked in his parking space. She responded it belonged to her boyfriend, whereupon appellant entered the living room, pulled a pistol, and fired one shot into the sleeping body of Hershel Thompson. Ms. Cross further testified that appellant then pulled Thompson to the floor and kicked him several times in the head and abdomen. After he had finished kicking Thompson, appellant reportedly told Ms. Cross to go and get help. When she returned to her apartment, appellant was gone and Thompson was dead.

In his second ground of error, appellant complains of certain improper questions by the prosecutor concerning a prior act of misconduct that had not been reduced to a conviction. During the guilt/innocence phase of trial, appellant called his girlfriend, Mary McCoy, to testify on his behalf. After establishing the length of time of the relationship, appellant's counsel asked Ms. McCoy if she had ever known appellant to be a violent man. Ms. McCoy answered "no." On cross-examination by the state, the following transpired:

Q Now, you have testified and you want this jury—you want them to believe that this defendant, Albert Castro has a non-violent personality; is that right?

A That's right.

Q Isn't it a fact that in 1961 he killed a young boy, age 19, by shooting him in the chest?

A I don't know. I'm not from here. I'm from out of town.

Q Isn't it a fact that he killed a boy at this time by the name of John Glenn, Jr. . . . on the date of September 29, 1961?

Appellant's counsel timely objected, but his objection was overruled by the court. La-

ter, at the close of the cross-examination, the prosecution asked Ms. McCoy the following question:

Q I have only got one last question for you and that is: How many free murders do you think somebody should be allowed . . .

Appellant's counsel again objected. This time the court sustained the objection and instructed the jury to disregard the question. Appellant's motion for mistrial, however, was denied.

The state admits appellant was never convicted for the alleged killing in 1961. In fact, the state never introduced any evidence of an arrest or a dismissal of a charge until the punishment phase. The first question before us, therefore, is whether the court erred in allowing the state to inquire into a specific act of misconduct that did not result in a conviction, or whether the line of questioning was within the proper realm of impeachment. The second issue presented is whether the state's final question to Ms. McCoy was so improper and prejudicial that it was not cured by the court's instruction to disregard.

■ The law is well established that charges of earlier offenses are inadmissible for impeachment purposes unless the charges resulted in final convictions for felony offenses or final convictions for misdemeanors involving moral turpitude, none of which are too remote. *Shipman v. State,* 604 S.W.2d 182 (Tex.Cr.App.1980); *Trippell v. State,* 535 S.W.2d 178 (Tex.Cr.App.1976); *Reese v. State,* 531 S.W.2d 638 (Tex.Cr.App. 1976); *Ochoa v. State,* 481 S.W.2d 847 (Tex. Cr.App.1972). The state, however, maintains an exception to this rule applies to this case

when the witness, by his direct testimony, leaves a false impression of his "trouble" with the police. In this situation, it is legitimate to prove that the witness had been "in trouble" on occasions other than those about which he offered direct testimony.

*Reese,* 531 S.W.2d at 640; *See: Ex Parte Carter,* 621 S.W.2d 786 (Tex.Cr.App.1981).

The state argues that since appellant "opened the door" as to his non-violent nature, the state was permitted to inquire into the full extent of appellant's prior troubles and characteristic for violence.

We disagree. We do not believe this exception applies to appellant's situation because the state's line of questioning was clearly improper. In the first instance, appellant was not testifying on his own behalf. Both *Reese, supra,* and *Carter, supra,* involved situations where a defendant personally took the stand and testified to his past record. In both cases the defendants were attempting to give a wrong impression to the jury, so the use of prior "troubles" for impeachment was proper. Here, appellant did not personally testify.

Second, Ms. McCoy testified that in the "two to four or five years" she had known appellant he was not violent. The state's questions concerned an alleged event some 19 to 20 years earlier involving an occurrence too remote for Ms. McCoy to have any personal knowledge, or to fit within the rule. *McClendon v. State,* 509 S.W.2d 851 (Tex.Cr.App.1974). The reason for a remoteness limitation is because a remote offense is a poor indication of an accused's present character. *See: Miller v. State,* 549 S.W.2d 402, 403 (Tex.Cr.App.1977); *Bustillos v. State,* 464 S.W.2d 118 (Tex.Cr.App. 1971). In *Penix v. State,* 488 S.W.2d 86 (Tex.Cr.App.1972), the Court of Criminal Appeals in discussing a prior *conviction,* held:

> Even though this court has never "undertaken to fix arbitrarily and absolutely a space of time which would characterize such testimony as too remote", there seems to have developed a rule of thumb or guideline that such should not be admitted if the time lapse exceeds ten years.

*Id.* at 88. In *Miller, supra,* and *McClendon, supra,* twelve years was seen as too remote for cross-examination on a prior *conviction.* Therefore, an offense that occurred some 19 years earlier and did not result in a conviction is too remote.

■ Most clearly, however, the exception proposed by the state does not apply to this case because Ms. McCoy's testimony did not involve a "blanket" statement concerning appellant's "trouble with the law," and therefore did not open the door to such questioning. In *Ochoa v. State,* 481 S.W.2d 847 (Tex.Cr.App.1972), the Court of Criminal Appeals held this exception applies where the witness makes a *blanket statement* concerning his exemplary conduct "such as having never been arrested, charged or convicted of any offense, or having never been 'in trouble,' or purports to detail his convictions leaving the impression there are no others." *Id.* at 850. The Court has continued to require that a witness make some statement creating a false impression as to prior conduct before such questioning is allowed. *Hoffman v. State,* 514 S.W.2d 248 (Tex.Cr.App.1974); *Carter, supra; Shipman, supra; Reese, supra.* No such statement was made here.

The cases cited by the state are easily distinguished from the facts of this case. In *Reese, supra,* a case involving aggravated robbery, the defendant took the stand and, after being asked about his prior "trouble with the law," testified to having pled guilty to the offense of car theft some years earlier. The defendant further stated he was pleading not guilty to the current robbery charge because, unlike the car theft case, he was innocent. The state was allowed to come back on cross-examination with questions concerning other convictions and an arrest for unauthorized use of an automobile. In holding the questions were proper, the Court stated:

> While counsel did not ask if this was all the trouble he had been in, appellant's failure to relate other instances clearly left the impression with the jury that this was the extent of his "trouble with the law."

*Id.* at 641. *See: Carter, supra,* where the defendant, after being told to "get specific" about his earlier trouble with the law, testified as to two prior convictions and two arrests. With this "door opened," the Court found no error in permitting cross-examination which revealed thirteen additional arrests. *Id.* at 788.

In the instant case, Ms. McCoy made no blanket statement concerning appellant's prior trouble with the police which created a false impression with the jury. Her testimony involved her knowledge of appellant, which did not open the door to questions concerning an alleged shooting some 19 years earlier that did not result in a conviction. Clearly, this line of questioning was improper, and the court erred in not sustaining appellant's timely objection. *Carter, supra; Miller, supra.*

■ While the above error would support a reversal on its own, the second issue causes us equal concern for appellant's right to a fair trial. The question "How many free murders do you think somebody should be allowed . . ." was clearly improper, regardless of the state's contention it is unclear the statement was referring to appellant. The issue before us is whether the trial court's action in sustaining the objection and instructing the jury to disregard the question rendered the error harmless. We hold it did not.

■ It has been long established that it is reversible error to ask an improperly framed question asserting as fact an accused's prior acts of misconduct. *Webber v. State*, 472 S.W.2d 136 (Tex.Cr.App.1971); *McNaulty v. State*, 138 Tex.Cr.R. 317, 135 S.W.2d 987 (Tex.Cr.App.1940). The general rule, however, is that an error in asking an improper question may be cured or rendered harmless by either a withdrawal of the question or testimony, or by an instruction to disregard. *Cavender v. State*, 547 S.W.2d 601 (Tex.Cr.App.1977). "The exception to this general rule occurs where it appears that the question or the evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds." *Id.* at 603; *Carrillo v. State*, 591 S.W.2d 876 (Tex.Cr.App.1979). An additional factor to consider is whether the prosecutor asked the question in bad faith. *Id.* at 893.

There is no doubt the above question was asked in bad faith and was calculated to inflame the minds of the jury. As pointed out by appellant in his brief, the prosecutor's question, after improperly bringing out the prior act of misconduct, inferred that appellant had already committed an earlier murder for which he had gone unpunished. The question inferred that since appellant had once committed murder but had escaped punishment, he should not be allowed to get off again. Such questioning has no rational purpose other than to inflame the jury to convict an accused apart from the facts of the case. Therefore, because the state's bad faith question was of the type to inflame the minds of the jury so as to suggest the impossibility of withdrawing the impression produced on their minds, the court's instruction to disregard did not cure the error. *Carrillo, supra; Cavender, supra.* This being the case, the court erred in not granting appellant's timely motion for mistrial.

Because we reverse the judgment on the basis of this improper line of questioning, we find it unnecessary to address appellant's grounds of error concerning other improper actions by the prosecution in court. We wish to make it known we see the murder here as especially senseless and brutal. But the conscious improper questioning by the state in this case denied appellant a fair and impartial trial. We therefore reverse the judgment of the court and remand the case for a new trial.