Elkins v. State

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-243-CR

FRANKLIN ROBERT ELKINS A/K/A APPELLANT

ROBERT FRANKLIN ELKINS 

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Franklin Robert Elkins a/k/a Robert Franklin Elkins appeals his conviction for intoxication manslaughter.  In eight issues, appellant contends that the trial court erred by refusing to instruct the jury about when a driver is required to yield the right of way; by overruling his motion to quash the enhancement paragraph; by admitting testimony on retrograde extrapolation; and by overruling his objections during closing arguments to a question that was not supported by the record and to a misstatement of the evidence.  We affirm.

At 3:30 p.m.
 on April 16, 2002, Hector Vitolas was driving Eliana Salas 
home from Carter Riverside High School in his 1969 Ford Mustang.  Vitolas was traveling west on Bird Street when he came to a stop sign at the intersection of Bird Street and Riverside Drive. 
 Vitolas stopped at the stop sign, briefly chatted with some fellow students who approached his vehicle, and then proceeded across the intersection.  When Vitolas was about three-quarters of the way through the intersection, appellant’s vehicle struck the passenger side of Vitola’s vehicle.

Appellant had been driving south on Riverside Drive at least twelve miles per hour
 above the posted thirty-five mile-per-hour speed limit. 
 Vehicles traveling on Riverside Drive are not required to stop at the Bird Street intersection.  Although appellant did brake before reaching the intersection, his vehicle struck Vitolas’s vehicle with enough force to sever Salas’s spinal cord, killing her instantly.  Vitolas died from massive internal injuries shortly thereafter.

Immediately after the accident, appellant got out of his car and began to walk away but decided to stay at the scene after a bystander warned him not to leave.  The first Fort Worth police officer to arrive at the scene, William Cloud, noticed symptoms in appellant that he attributed to alcohol intoxication.
(footnote: 2) Officer Erik Martinez, another police officer who responded to the scene of the accident, detected a strong odor of beer coming from appellant and appellant’s vehicle.  Two paramedics also noted a strong smell of alcohol coming from appellant.  Appellant told one of the paramedics that he had consumed two beers. 

The paramedics transported appellant to the hospital, where he gave two blood samples.  The first sample, taken at 4:30 p.m., showed a blood alcohol level of .28.  The second sample, taken at 5:50 p.m., showed a blood alcohol level of .22.  The hospital personnel who treated appellant opined that he was intoxicated.

Appellant was charged with intoxication manslaughter.  His indictment contained an enhancement paragraph alleging one prior felony conviction for burglary of a vehicle.  A jury found him guilty of the charged offense, found that he had one prior felony conviction, and assessed punishment at thirty years’ incarceration. 

In his first and second issues, appellant contends that the trial court erred by excluding from the jury charge a definition or special instructions on a driver’s duty to yield the right of way.
(footnote: 3)  An accused is entitled to an instruction on every defensive issue raised by the evidence.  
Muniz v. State
, 851 S.W.2d 238, 254 (Tex. Crim. App.), 
cert. denied
, 510 U.S. 837 (1993).  For concurrent causation to be raised by the evidence, there must be evidence both that a concurrent cause was sufficient to cause the result and that the conduct of the defendant was clearly insufficient to cause the result. 
 See Hutcheson v. State
, 899 S.W.2d 39, 42 (Tex. App.—Amarillo 1995, pet. ref'd). 

In this case, the record contains no evidence that Vitolas’s failure to yield the right of way was, by itself, sufficient to cause the accident or that appellant’s reckless driving was clearly insufficient to cause the accident. Therefore, the trial court did not err by refusing to submit to the jury a definition or special instructions regarding a driver’s duty to yield the right of way. Accordingly, we overrule appellant’s first and second issues.

In his third and fourth issues, appellant contends that the trial court’s use of an offense for felony enhancement that had been reduced to a misdemeanor at the time of conviction violated the United States Constitution’s prohibition against cruel and unusual punishment and that the trial court erred by failing to sustain his motion to quash the enhancement paragraph because it violated the prohibition against cruel and unusual punishment in the Texas Constitution.
(footnote: 4)
 Appellant committed burglary of a motor vehicle in February 1991 and received deferred adjudication for that offense on April 24, 1991.  At that time, burglary of a motor vehicle was a third-degree felony.  
See
 Act of May 23, 1973, 63rd Leg., R.S., ch. 399, § 1, sec. 30.04, 1973 Tex. Gen. Laws 883, 927.

In 1993, the legislature amended the penal code and reclassified burglary of a vehicle as a Class A misdemeanor. 
 See
 Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 30.04(c), 1993 Tex. Gen. Laws 3586, 3634 (amended 1999) (current version at 
Tex. Penal Code Ann
. § 30.04(d) (Vernon 2003)).  A savings provision accompanied the 1993 amendments and states as follows:

SECTION 1.18. (a) The change in law made by this article applies only to an offense committed on or after the effective date of this article.  For purposes of this section, an offense is committed before the effective date of this article if any element of the offense occurs before the effective date. 

(b) An offense committed before the effective date of this article is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose.

Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.18, 1993 Tex. Gen. Laws 3586, 3705.

On October 6, 1998, the trial court revoked appellant’s deferred adjudication probation and adjudicated him guilty of the third-degree felony offense of burglary of a vehicle.  Pursuant to section 12.44(a) of the penal code, the trial court reduced his punishment for this felony offense to that for a Class A misdemeanor.
(footnote: 5) 

Appellant’s indictment in this case contains an enhancement paragraph, alleging that he had been previously convicted of the felony offense of burglary of a vehicle, to which appellant pleaded “not true.”  Nevertheless, the jury found that appellant had one prior felony conviction and assessed his punishment at thirty years’ incarceration.  Without the prior felony conviction, appellant could not have been sentenced to more than twenty years.  
See 
Tex. Penal Code Ann. 
§§ 12.33, 49.08(b) (Vernon 2003).  Appellant contends that the ten additional years of incarceration constitute cruel and unusual punishment.

The Eighth Amendment provides:  “Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.”
(footnote: 6)  The prohibition against cruel and unusual punishments “draw[s] its meaning from the evolving standards of decency that mark the progress of a maturing society.”  
Trop v. Dulles
, 356 U.S. 86, 101, 78 S. Ct. 590, 598 (1958).  The best evidence of these evolving standards “is the legislation enacted by the country’s legislatures.”  
Penry v. Lynaugh
, 492 U.S. 302, 331, 109 S. Ct. 2934, 2953 (1989), 
abrogated on other grounds, Atkins v. Virginia
, 536 U.S. 304, 122 S. Ct. 2242 (2002).  The length of sentence imposed for a felony is “purely a matter of legislative prerogative.”  
Rummel v. Estelle
, 445 U.S. 263, 274, 100 S. Ct. 1133, 1139 (1980).

In this case, appellant’s sentence is within the sentencing range prescribed by the legislature.  
Appellant properly received a felony conviction for burglary of a vehicle because he committed that offense before September 1, 1994.  A felony conviction may be used to enhance punishment for a separate offense, even if the offense that led to the conviction has been subsequently reclassified as a misdemeanor.  
See
 
Alvarado v. State
, 596 S.W.2d 904, 906 (Tex. Crim. App. [Panel Op.] 1980);
 Moreno v. State
, 541 S.W.2d 170, 174 (Tex. Crim. App. 1976).
(footnote: 7)  The sentencing range for an accused with a prior felony conviction who has been convicted of intoxication manslaughter is five to ninety-nine years or life.  
See
 
Tex. Penal Code Ann.
 § 12.32(a) (Vernon 2003), § 12.42(b) (Vernon Supp. 2005).  Because appellant’s thirty-year sentence is within the sentencing range prescribed by the legislature, it does not constitute cruel and unusual punishment.  
See Rummel, 
445 U.S. at 274, 100 S. Ct. at 1139; 
Johnson v. State
, 864 S.W.2d 708, 724-25 (Tex. App.—Dallas 1993), 
aff’d,
 912 S.W.2d 227 (Tex. Crim. App. 1995).  Accordingly, we overrule appellant’s third and fourth issues.

In his fifth and sixth issues, appellant contends that the trial court erred by admitting retrograde extrapolation testimony from the State’s expert witness because the expert did not have sufficient information to form a reliable opinion regarding extrapolation and the evidence was more prejudicial than probative.

We review the trial court’s ruling on the admissibility of expert testimony under an abuse of discretion standard.  
See Prystash v. State
, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1102 (2000).
  We review the ruling in light of what was before the court at the time the ruling was made and will not overturn it so
 long as it is within the zone of reasonable disagreement
.  
Carrasco v. State,
 154 S.W.3d 127, 129 (Tex. Crim. App. 2005)
; 
Weatherred v. State,
 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).
  
The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  
Manning v. State,
 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

Retrograde extrapolation is the computation back in time of the blood-alcohol level—that is, the estimation of the level at the time of driving based on a test result from some later time.  
Mata v. State,
 46 S.W.3d 902, 908-09 (Tex. Crim. App. 2001). 
 To obtain admission of retrograde extrapolation testimony, t
he proponent of the testimony must prove by clear and convincing evidence that the testimony is relevant and reliable.  
State v. Medrano
, 127 S.W.3d 781, 786 (Tex. Crim. App. 2004); 
Weatherred
, 15 S.W.3d at 542.  Expert testimony is relevant if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.  
Tex. R. Evid.
 702. 
 
But even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  
Tex. R. Evid.
 403.

In determining whether retrograde extrapolation evidence is reliable, the trial court should consider (a) the length of time between the offense and the test(s) administered; (b) the number of tests given and the length of time between each test; and (c) whether, and if so, to what extent, any individual characteristics of the defendant were known to the expert in providing his extrapolation.  
Mata,
 46 S.W.3d at 916. These characteristics and behaviors might include, but are not limited to, the person’s weight and gender, the person’s typical drinking pattern and tolerance for alcohol, how much the person had to drink on the day or night in question, what the person drank, the duration of the drinking spree, the time of the last drink, and how much and what the person had to eat either before, during, or after the drinking.  
Id.

In this case, Fondren testified that he knew the following facts about appellant.  He was a twenty-nine-year-old caucasian male, six feet, one inch tall, weighing 150 pounds, and in overall relatively good health.  Blood tests performed on appellant at 4:30 p.m. and 5:50 p.m. showed blood alcohol concentrations of .28 and .22, respectively.  Appellant had reported to the hospital staff that he had consumed six beers “this afternoon” and between three and eight beers “today.”  Appellant had not drunk any alcohol after 3:30 p.m., the time of the accident.  Appellant had also reported eating lunch, but Fondren did not know when or how much appellant ate. 

Both outside the jury’s presence and before the jury, Fondren testified that he could not determine appellant’s blood alcohol concentration at the time of the accident because he did not know when appellant had last consumed alcohol or whether it had been on a full or empty stomach, which would have affected its absorption rate into appellant’s system.  Therefore, Fondren did not give an opinion about whether appellant’s blood alcohol level was at, above, or below the legal limit
(footnote: 8) when the accident occurred. 

Fondren did testify, however, that a standard twelve-ounce beer, drunk on an empty stomach, will raise the blood alcohol concentration of a 150-pound male of appellant’s build by an average value of .02; therefore, it takes an average of ten beers to raise a 150-pound male’s blood alcohol concentration from .08 to .28
(footnote: 9) or eleven beers to raise the same person’s blood alcohol level from .06 to .28.  Fondren testified that he based these calculations on his scientific knowledge regarding absorption and elimination rates applied to appellant’s weight, gender, and build, coupled with Fondren’s experiences of “dosing” hundreds, if not thousands, of individuals with alcohol and then testing their blood alcohol levels.  Fondren further testified that these values are based on an empty stomach; if a person has a full stomach, more alcohol is required because food slows the absorption of alcohol into a person’s system. 

Moreover, based on his scientific knowledge and experience and the information he knew about appellant, Fondren testified unequivocally that appellant’s reported alcohol consumption of six beers “this afternoon” or three to eight beers “today” could not have resulted in appellant’s peak blood alcohol level of .28 at 4:30 p.m., no matter when appellant had consumed the alcohol. 

Fondren acknowledged, however, that because it takes the body fifteen to twenty minutes to begin to absorb alcohol after it is consumed and up to an hour to absorb it completely, appellant’s blood alcohol level could have been both under .08 at 3:30 p.m. (the time of the accident) and .28 at 4:30 p.m. if appellant had consumed the nine to eleven beers “relatively quickly” at 3:10 p.m. or 3:15 p.m.  Fondren conceded that he could not eliminate the possibility that this is what occurred in this case. 

Based on this record, we hold that the trial court reasonably could have concluded that Fondren’s testimony was reliable.  Fondren carefully explained—first to the trial court and then to the jury—what he could and could not conclude about appellant’s alcohol consumption and its potential effects on appellant’s blood alcohol levels, both at the time of the accident and at 4:30 p.m.  These conclusions were based on Fondren’s experience and his knowledge of general scientific principles as applied to appellant’s individual characteristics and his blood alcohol test results.

Further, the trial court could have concluded that Fondren’s testimony would assist the jury in understanding the evidence and in determining whether appellant was intoxicated when the accident occurred.  
See
 
Tex. R. Evid.
 702.  For example, the testimony helped the jury understand what it could and could not infer from appellant’s blood test results at 4:30 p.m. and 5:50 p.m. and whether appellant’s self-reporting about his alcohol consumption was reliable.  Although much of the testimony benefitted the State, Fondren also candidly admitted that appellant’s blood alcohol level at the time of the accident may not have been above the legal limit, even if he had consumed a significant quantity of alcohol just before the accident occurred.  Without this testimony, the jury may have viewed the test results as prima facie evidence of appellant’s intoxication at the time of the accident.  Therefore, the trial court reasonably could have concluded that Fondren’s testimony was both relevant and not more prejudicial than probative. 
Tex. R. Evid.
 403, 702.

Accordingly, for all of the foregoing reasons, we hold that the trial court did not abuse its discretion by admitting Fondren’s testimony.  
See Carrasco,
 154 S.W.3d at 129
; 
Weatherred,
 15 S.W.3d at 542
.  We overrule appellant’s fifth and sixth issues.

In his seventh issue, appellant contends that the trial court erred by allowing an inflammatory description of the deceased's injuries in a question by the prosecutor that was not supported by the record.

During the prosecutor’s cross-examination of appellant’s sister, the following exchange took place:

Q.  And you heard the testimony that the girl–the girl that he killed had her head torn off almost at the neck?

A.  I’m sorry.  Can you say that again?

[Appellant’s trial counsel]:  You Honor, I am going to object.  That is a misrepresentation of that testimony.

[Prosecutor]:  Well, judge, that is exactly what he said.  He said the only thing that was holding her head to the body is the skin.

[Appellant’s trial counsel]:  That is not exactly what he said.  He doesn’t say the latter part, but not almost torn off.

THE COURT:  The jury will recall the testimony.

[Appellant’s trial counsel]:  Is that overruled?

THE COURT:  That’s overruled.

The prosecutor was referring to the testimony of the medical examiner who performed Salas’s autopsy, which was as follows:

Q.  You talked specifically about an Atlanto-occipital transection?

A.  Or dislocation, yes.

Q.  And what exactly is that again so we are clear?  What part of the head are we talking about?  What is that doing?

A.  Well, the–the skull has a bone at the base and it has little–they look like cushions, but they are actually bony.  It is that part of the occiput that touches the top of the spinal column.  The very first cervical vertebra, all of us have seven, is called the atlas, like Atlas who held up the earth and the skull being the earth of sorts.  So when you separate the atlas from the occiput, you are basically pulling the skull away from the very first spinal vertebra.

Q.  And is it also connected, then, this transection of the proximal spinal cord?

A.  Yes, in this place the spinal cord, running through the spinal canal, would separate as well and that is also the point where the vertebral arteries, the arteries that come up through the vertebra, until the skull lacerated.

Q.  So what is keeping her head on her body after this injury?

A.  Basically soft tissues, muscle. 

A question lacking evidentiary support may be improper. 
 See Cavender v. State
, 547 S.W.2d 601, 603 (Tex. Crim. App. 1977) (holding that a question based on “hearsay several times removed” was improper); 
Castro v. State
, 651 S.W.2d 1, 4 (Tex. App.—Houston [14th Dist.] 1982, no pet.) (holding that questions about an alleged murder for which the defendant was never convicted were improper).  After reviewing the medical examiner’s testimony, however, we conclude that the prosecutor’s question was supported by the evidence.

Although the medical examiner did not use the words “head torn off” to describe Salas’s neck injury, he did state that the force of the accident severed Salas’s spinal cord and vertebral arteries and caused Salas’s skull to detach from her spinal cord.  The fact that the skin and muscles on Salas’s neck remained intact did not diminish the seriousness of the injury.  The prosecutor’s question was designed to uncover whether appellant’s sister understood the grave nature of Salas’s injuries.  Because the question was grounded in the record, the trial court did not err by overruling appellant’s trial counsel’s objection to it.  Accordingly, we overrule appellant’s seventh issue.

In his eighth issue, appellant contends that the trial court erred by overruling his objection to the prosecutor’s argument that appellant had a blood alcohol level of .28 at 3:30 p.m.

During her closing argument, the prosecutor said, “It’s 3:30 in the afternoon.  That goes back to judgment.  What are you doing at .28 at that early in the afternoon?”  Appellant’s trial counsel objected on the grounds that the prosecutor misstated the evidence, and the trial court overruled the objection.  

The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the admitted evidence alone.  
See Campbell v. State
, 610 S.W.2d 754, 756 (Tex. Crim. App. [Panel Op.] 1980); 
Coggeshall v. State
,  961 S.W.2d 639, 642 (Tex. App.—Fort Worth 1998, pet. ref’d).  To be permissible, jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to opposing counsel's argument; or (4) plea for law enforcement. 
See Felder v. State
, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), 
cert. denied
, 510 U.S. 829 (1993); 
Coggeshall, 
961 S.W.2d at 642.

The State concedes that the prosecutor misstated the evidence.  Because a misstatement of the evidence is not a proper subject for jury argument, we must decide whether the prosecutor’s misstatement affected appellant’s substantial rights.  
See United States v. Apodaca
, 666 F.2d 89, 97 (5th Cir.), 
cert. denied
, 459 U.S. 823 (1982); 
Coggeshall, 
961 S.W.2d at 643 (both holding that improper prosecutorial comments and misstatements are not constitutional in nature but can affect a defendant's substantial rights).  A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.  
Tex. R. App. P.
 44.2(b); 
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); 
Coggeshall, 
961 S.W.2d at 643.

In this case, the prosecutor’s first statement after the trial court overruled appellant’s objection was, “Well, at 4:30 we know for a fact he was .28, don’t we?”  This statement acknowledged that her prior statement was not, in fact, a fact.  Moreover, the prosecutor correctly stated that appellant’s blood alcohol level was .28 at 4:30 p.m. at least three more times during her closing argument. 

Because the prosecutor de-emphasized her misstatement and repeated the true time at which appellant’s blood alcohol level was .28 several times, and because Fondren testified that it was impossible to calculate appellant’s blood alcohol level at 3:30 p.m. but that appellant would had to have consumed nine to eleven beers shortly before then to have a .28 blood alcohol level at 4:30 p.m., we conclude that the prosecutor’s misstatement of the evidence did not affect appellant’s substantial rights.  We overrule appellant’s eighth issue.

Having overruled all of appellant’s issues, we affirm the trial court’s judgment.

JOHN CAYCE

CHIEF JUSTICE

PANEL A: CAYCE, C.J.; WALKER, J.; and SAM J. DAY, J. (Retired, Sitting by Assignment).

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: November 17, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Officer Cloud testified that appellant had bloodshot eyes and slurred speech and had difficulty standing without stumbling over. 

3:
See
 
Tex. Transp. Code Ann.
 §§ 544.010, 545.153 (Vernon 1999) (governing vehicle driver’s duty to observe “stop” and “yield” signs).

4:
Because there is no significance in the difference between the Eighth Amendment and article I, section 13 of the Texas Constitution, 
see
 
Cantu v. State
, 939 S.W.2d 627, 645 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 994 (1997), we address these issues together.

5:
The version of section 12.44(a) in effect at the time appellant committed the burglary allowed a trial court to punish a defendant convicted of a third-degree felony by imposing the confinement permissible for a Class A misdemeanor.  
See
 Act of May 28, 1989, 71st Leg., R.S., ch. 785, § 4.02, 1989 Tex. Gen. Laws 3471, 3491.  Although the legislature amended section 12.44(a) in 1995 to change the category of the reducible offense from a third-degree felony to a state jail felony, appellant’s punishment for the burglary offense is governed by the law in effect when that offense was committed.  
See 
Act of May 28, 1995, 74th Leg., R.S., ch. 318, §§ 3, 84, 1995 Tex. Gen. Laws 2734, 2735, 2763 (amended 2005) (current version at 
Tex. Penal Code Ann.
 § 12.44(a) (Vernon Supp. 2005)).

6:
The Eighth Amendment’s prohibition against cruel and unusual punishment is applicable to the States through the Fourteenth Amendment. 
Roper v. Simmons
, __ U.S. __, 125 S. Ct. 1183, 1190 (2005).

7:
We are unpersuaded by appellant’s argument that the trial court’s reduction of his sentence for the burglary offense to that for a Class A misdemeanor “suggests [the court’s] recognition” that the burglary was more properly classified as a misdemeanor.  As we have discussed, the Class A misdemeanor punishment range was within the range set by the legislature for this offense.  
See supra
 n.5.

8:
A person is intoxicated for purposes of the DWI statute if he has an alcohol concentration of .08 or more.  
Tex. Penal Code Ann.
 § 49.01(2)(B) (Vernon 2003).

9:
Fondren testified that, due to individual differences, some 150-pound males would require nine beers while others would require eleven.