COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-04-243-CR

 

FRANKLIN
ROBERT ELKINS A/K/A                                          APPELLANT

ROBERT FRANKLIN ELKINS                                                                    

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








Appellant Franklin Robert
Elkins a/k/a Robert Franklin Elkins appeals his conviction for intoxication
manslaughter.  In eight issues, appellant
contends that the trial court erred by refusing to instruct the jury about when
a driver is required to yield the right of way; by overruling his motion to
quash the enhancement paragraph; by admitting testimony on retrograde
extrapolation; and by overruling his objections during closing arguments to a
question that was not supported by the record and to a misstatement of the
evidence.  We affirm.

At 3:30 p.m. on April 16,
2002, Hector Vitolas was driving Eliana Salas home from Carter Riverside High
School in his 1969 Ford Mustang.  Vitolas
was traveling west on Bird Street when he came to a stop sign at the intersection
of Bird Street and Riverside Drive. 
Vitolas stopped at the stop sign, briefly chatted with some fellow
students who approached his vehicle, and then proceeded across the
intersection.  When Vitolas was about
three-quarters of the way through the intersection, appellant=s vehicle struck the passenger side of Vitola=s vehicle.

Appellant had been driving
south on Riverside Drive at least twelve miles per hour above the posted thirty-five
mile-per-hour speed limit.  Vehicles
traveling on Riverside Drive are not required to stop at the Bird Street
intersection.  Although appellant did
brake before reaching the intersection, his vehicle struck Vitolas=s vehicle with enough force to sever Salas=s spinal cord, killing her instantly. 
Vitolas died from massive internal injuries shortly thereafter.








Immediately after the
accident, appellant got out of his car and began to walk away but decided to
stay at the scene after a bystander warned him not to leave.  The first Fort Worth police officer to arrive
at the scene, William Cloud, noticed symptoms in appellant that he attributed
to alcohol intoxication.[2]
Officer Erik Martinez, another police officer who responded to the scene of the
accident, detected a strong odor of beer coming from appellant and appellant=s vehicle.  Two paramedics also
noted a strong smell of alcohol coming from appellant.  Appellant told one of the paramedics that he
had consumed two beers. 

The paramedics transported
appellant to the hospital, where he gave two blood samples.  The first sample, taken at 4:30 p.m., showed
a blood alcohol level of .28.  The second
sample, taken at 5:50 p.m., showed a blood alcohol level of .22.  The hospital personnel who treated appellant
opined that he was intoxicated.

Appellant was charged with
intoxication manslaughter.  His
indictment contained an enhancement paragraph alleging one prior felony
conviction for burglary of a vehicle.  A
jury found him guilty of the charged offense, found that he had one prior
felony conviction, and assessed punishment at thirty years= incarceration. 








In his first and second
issues, appellant contends that the trial court erred by excluding from the
jury charge a definition or special instructions on a driver=s duty to yield the right of way.[3]  An accused is entitled to an instruction on
every defensive issue raised by the evidence. 
Muniz v. State, 851 S.W.2d 238, 254 (Tex. Crim. App.), cert.
denied, 510 U.S. 837 (1993).  For
concurrent causation to be raised by the evidence, there must be evidence both
that a concurrent cause was sufficient to cause the result and that the conduct
of the defendant was clearly insufficient to cause the result.  See Hutcheson v. State, 899 S.W.2d 39, 42
(Tex. App.CAmarillo
1995, pet. ref'd). 

In this case, the record
contains no evidence that Vitolas=s failure to yield the right of way was, by itself, sufficient to
cause the accident or that appellant=s reckless driving was clearly insufficient to cause the accident.
Therefore, the trial court did not err by refusing to submit to the jury a
definition or special instructions regarding a driver=s duty to yield the right of way. Accordingly, we overrule appellant=s first and second issues.








In his third and fourth
issues, appellant contends that the trial court=s use of an offense for felony enhancement that had been reduced to a
misdemeanor at the time of conviction violated the United States Constitution=s prohibition against cruel and unusual punishment and that the trial
court erred by failing to sustain his motion to quash the enhancement paragraph
because it violated the prohibition against cruel and unusual punishment in the
Texas Constitution.[4]

Appellant committed burglary
of a motor vehicle in February 1991 and received deferred adjudication for that
offense on April 24, 1991.  At that time,
burglary of a motor vehicle was a third-degree felony.  See Act of May 23, 1973, 63rd Leg.,
R.S., ch. 399, ' 1, sec.
30.04, 1973 Tex. Gen. Laws 883, 927.

In 1993, the legislature
amended the penal code and reclassified burglary of a vehicle as a Class A
misdemeanor.  See Act of May 29,
1993, 73rd Leg., R.S., ch. 900, ' 1.01, sec. 30.04(c), 1993 Tex. Gen. Laws 3586, 3634 (amended 1999)
(current version at Tex. Penal Code Ann.
' 30.04(d) (Vernon 2003)).  A
savings provision accompanied the 1993 amendments and states as follows:

SECTION
1.18. (a) The change in law made by this article applies only to an offense
committed on or after the effective date of this article.  For purposes of this section, an offense is
committed before the effective date of this article if any element of the
offense occurs before the effective date. 

 








(b)
An offense committed before the effective date of this article is covered by
the law in effect when the offense was committed, and the former law is
continued in effect for that purpose.

 

Act of May 29, 1993, 73rd Leg., R.S., ch. 900, ' 1.18, 1993 Tex. Gen. Laws 3586, 3705.

On October 6, 1998, the trial
court revoked appellant=s deferred
adjudication probation and adjudicated him guilty of the third-degree felony
offense of burglary of a vehicle. 
Pursuant to section 12.44(a) of the penal code, the trial court reduced
his punishment for this felony offense to that for a Class A misdemeanor.[5]









Appellant=s indictment in this case contains an enhancement paragraph, alleging
that he had been previously convicted of the felony offense of burglary of a
vehicle, to which appellant pleaded Anot true.@  Nevertheless, the jury found that appellant
had one prior felony conviction and assessed his punishment at thirty years= incarceration.  Without the
prior felony conviction, appellant could not have been sentenced to more than
twenty years.  See Tex. Penal Code Ann. '' 12.33, 49.08(b) (Vernon 2003). 
Appellant contends that the ten additional years of incarceration
constitute cruel and unusual punishment.

The Eighth Amendment
provides:  AExcessive bail shall not be required, nor excessive fines imposed, nor
cruel and unusual punishments inflicted.@[6]  The prohibition against cruel
and unusual punishments Adraw[s] its
meaning from the evolving standards of decency that mark the progress of a
maturing society.@  Trop v. Dulles, 356 U.S. 86, 101, 78
S. Ct. 590, 598 (1958).  The best
evidence of these evolving standards Ais the legislation enacted by the country=s legislatures.@  Penry v. Lynaugh, 492 U.S. 302, 331,
109 S. Ct. 2934, 2953 (1989), abrogated on other grounds, Atkins v. Virginia,
536 U.S. 304, 122 S. Ct. 2242 (2002). 
The length of sentence imposed for a felony is Apurely a matter of legislative prerogative.@  Rummel v. Estelle, 445
U.S. 263, 274, 100 S. Ct. 1133, 1139 (1980).








In this case, appellant=s sentence is within the sentencing range prescribed by the
legislature.  Appellant properly received
a felony conviction for burglary of a vehicle because he committed that offense
before September 1, 1994.  A felony conviction
may be used to enhance punishment for a separate offense, even if the offense
that led to the conviction has been subsequently reclassified as a
misdemeanor.  See Alvarado v.
State, 596 S.W.2d 904, 906 (Tex. Crim. App. [Panel Op.] 1980); Moreno v.
State, 541 S.W.2d 170, 174 (Tex. Crim. App. 1976).[7]  The sentencing range for an accused with a
prior felony conviction who has been convicted of intoxication manslaughter is
five to ninety-nine years or life.  See
Tex. Penal Code Ann. ' 12.32(a) (Vernon 2003), ' 12.42(b) (Vernon Supp. 2005). 
Because appellant=s
thirty-year sentence is within the sentencing range prescribed by the legislature,
it does not constitute cruel and unusual punishment.  See Rummel, 445 U.S. at 274, 100 S.
Ct. at 1139; Johnson v. State, 864 S.W.2d 708, 724‑25 (Tex. App.CDallas 1993), aff=d, 912 S.W.2d 227 (Tex. Crim.
App. 1995).  Accordingly, we overrule
appellant=s third and
fourth issues.








In his fifth and sixth
issues, appellant contends that the trial court erred by admitting retrograde
extrapolation testimony from the State=s expert witness because the expert did not have sufficient
information to form a reliable opinion regarding extrapolation and the evidence
was more prejudicial than probative.

We review the trial court=s ruling on the admissibility of expert testimony under an abuse of
discretion standard.  See Prystash v.
State, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999), cert. denied, 529
U.S. 1102 (2000).  We review the ruling
in light of what was before the court at the time the ruling was made and will
not overturn it so long as it is within the zone of reasonable
disagreement.  Carrasco v. State,
154 S.W.3d 127, 129 (Tex. Crim. App. 2005); Weatherred v. State, 15
S.W.3d 540, 542 (Tex. Crim. App. 2000). 
The mere fact that a trial court may decide a matter within its
discretionary authority in a different manner than an appellate court would in
a similar circumstance does not demonstrate that an abuse of discretion has
occurred.  Manning v. State, 114
S.W.3d 922, 926 (Tex. Crim. App. 2003).








Retrograde extrapolation is
the computation back in time of the blood‑alcohol levelCthat is, the estimation of the level at the time of driving based on a
test result from some later time.  Mata
v. State, 46 S.W.3d 902, 908-09 (Tex. Crim. App. 2001).  To obtain admission of retrograde
extrapolation testimony, the proponent of the testimony must prove by clear and
convincing evidence that the testimony is relevant and reliable.  State v. Medrano, 127 S.W.3d 781, 786
(Tex. Crim. App. 2004); Weatherred, 15 S.W.3d at 542.  Expert testimony is relevant if scientific,
technical, or other specialized knowledge will assist the trier of fact to
understand the evidence or to determine a fact in issue.  Tex.
R. Evid. 702.  But even
relevant evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice. 
Tex. R. Evid. 403.

In determining whether
retrograde extrapolation evidence is reliable, the trial court should consider
(a) the length of time between the offense and the test(s) administered; (b)
the number of tests given and the length of time between each test; and (c)
whether, and if so, to what extent, any individual characteristics of the
defendant were known to the expert in providing his extrapolation.  Mata, 46 S.W.3d at 916. These
characteristics and behaviors might include, but are not limited to, the person=s weight and gender, the person=s typical drinking pattern and tolerance for alcohol, how much the
person had to drink on the day or night in question, what the person drank, the
duration of the drinking spree, the time of the last drink, and how much and
what the person had to eat either before, during, or after the drinking.  Id.








In this case, Fondren
testified that he knew the following facts about appellant.  He was a twenty-nine-year-old caucasian male,
six feet, one inch tall, weighing 150 pounds, and in overall relatively good
health.  Blood tests performed on
appellant at 4:30 p.m. and 5:50 p.m. showed blood alcohol concentrations of .28
and .22, respectively.  Appellant had
reported to the hospital staff that he had consumed six beers Athis afternoon@ and between
three and eight beers Atoday.@  Appellant had not drunk any
alcohol after 3:30 p.m., the time of the accident.  Appellant had also reported eating lunch, but
Fondren did not know when or how much appellant ate. 

Both outside the jury=s presence and before the jury, Fondren testified that he could not
determine appellant=s blood
alcohol concentration at the time of the accident because he did not know when
appellant had last consumed alcohol or whether it had been on a full or empty
stomach, which would have affected its absorption rate into appellant=s system.  Therefore, Fondren
did not give an opinion about whether appellant=s blood alcohol level was at, above, or below the legal limit[8]
when the accident occurred. 








Fondren did testify, however,
that a standard twelve-ounce beer, drunk on an empty stomach, will raise the
blood alcohol concentration of a 150-pound male of appellant=s build by an average value of .02; therefore, it takes an average of
ten beers to raise a 150-pound male=s blood alcohol concentration from .08 to .28[9]
or eleven beers to raise the same person=s blood alcohol level from .06 to .28. 
Fondren testified that he based these calculations on his scientific
knowledge regarding absorption and elimination rates applied to appellant=s weight, gender, and build, coupled with Fondren=s experiences of Adosing@ hundreds,
if not thousands, of individuals with alcohol and then testing their blood
alcohol levels.  Fondren further
testified that these values are based on an empty stomach; if a person has a
full stomach, more alcohol is required because food slows the absorption of
alcohol into a person=s system. 

Moreover, based on his
scientific knowledge and experience and the information he knew about
appellant, Fondren testified unequivocally that appellant=s reported alcohol consumption of six beers Athis afternoon@ or three to
eight beers Atoday@ could not have resulted in appellant=s peak blood alcohol level of .28 at 4:30 p.m., no matter when
appellant had consumed the alcohol. 








Fondren acknowledged,
however, that because it takes the body fifteen to twenty minutes to begin to
absorb alcohol after it is consumed and up to an hour to absorb it completely,
appellant=s blood
alcohol level could have been both under .08 at 3:30 p.m. (the time of the
accident) and .28 at 4:30 p.m. if appellant had consumed the nine to eleven
beers Arelatively quickly@ at 3:10 p.m. or 3:15 p.m. 
Fondren conceded that he could not eliminate the possibility that this
is what occurred in this case. 

Based on this record, we hold
that the trial court reasonably could have concluded that Fondren=s testimony was reliable. 
Fondren carefully explainedCfirst to the trial court and then to the juryCwhat he could and could not conclude about appellant=s alcohol consumption and its potential effects on appellant=s blood alcohol levels, both at the time of the accident and at 4:30
p.m.  These conclusions were based on
Fondren=s experience and his knowledge of general scientific principles as
applied to appellant=s individual
characteristics and his blood alcohol test results.








Further, the trial court
could have concluded that Fondren=s testimony would assist the jury in understanding the evidence and in
determining whether appellant was intoxicated when the accident occurred.  See Tex.
R. Evid. 702.  For example, the
testimony helped the jury understand what it could and could not infer from
appellant=s blood test
results at 4:30 p.m. and 5:50 p.m. and whether appellant=s self-reporting about his alcohol consumption was reliable.  Although much of the testimony benefitted the
State, Fondren also candidly admitted that appellant=s blood alcohol level at the time of the accident may not have been
above the legal limit, even if he had consumed a significant quantity of
alcohol just before the accident occurred. 
Without this testimony, the jury may have viewed the test results as
prima facie evidence of appellant=s intoxication at the time of the accident.  Therefore, the trial court reasonably could
have concluded that Fondren=s testimony was both relevant and not more prejudicial than probative.
Tex. R. Evid. 403, 702.

Accordingly, for all of the
foregoing reasons, we hold that the trial court did not abuse its discretion by
admitting Fondren=s
testimony.  See Carrasco, 154
S.W.3d at 129; Weatherred, 15 S.W.3d at 542.  We overrule appellant=s fifth and sixth issues.

In his seventh issue,
appellant contends that the trial court erred by allowing an inflammatory
description of the deceased's injuries in a question by the prosecutor that was
not supported by the record.

During the prosecutor=s cross-examination of appellant=s sister, the following exchange took place:

Q.  And you heard the testimony that the girlBthe
girl that he killed had her head torn off almost at the neck?

 

A.  I=m sorry.  Can you say that
again?

[Appellant=s
trial counsel]:  You Honor, I am going to
object.  That is a misrepresentation of
that testimony.

 

[Prosecutor]:  Well, judge, that is exactly what he
said.  He said the only thing that was
holding her head to the body is the skin.

 








[Appellant=s trial counsel]:  That is not
exactly what he said.  He doesn=t say the latter part, but not almost torn off.

THE COURT:  The jury will recall the testimony.

[Appellant=s trial counsel]:  Is that
overruled?

THE COURT:  That=s overruled.

The prosecutor was referring
to the testimony of the medical examiner who performed Salas=s autopsy, which was as follows:

Q.  You talked specifically about an
Atlanto-occipital transection?

A.  Or dislocation, yes.

Q.  And what exactly is that again so we are
clear?  What part of the head are we
talking about?  What is that doing?

 

A.  Well, theBthe skull has a bone at the
base and it has littleBthey
look like cushions, but they are actually bony. 
It is that part of the occiput that touches the top of the spinal
column.  The very first cervical
vertebra, all of us have seven, is called the atlas, like Atlas who held up the
earth and the skull being the earth of sorts. 
So when you separate the atlas from the occiput, you are basically
pulling the skull away from the very first spinal vertebra.

 

Q.  And is it also connected, then, this
transection of the proximal spinal cord?

 

A.  Yes, in this place the spinal cord, running
through the spinal canal, would separate as well and that is also the point
where the vertebral arteries, the arteries that come up through the vertebra,
until the skull lacerated.

Q.  So what is keeping her head on her body after
this injury?

A.  Basically soft tissues, muscle. 








A question lacking
evidentiary support may be improper.  See Cavender v. State, 547 S.W.2d 601, 603
(Tex. Crim. App. 1977) (holding that a question based on Ahearsay several times removed@ was improper); Castro v. State, 651 S.W.2d 1, 4 (Tex. App.CHouston [14th Dist.] 1982, no pet.) (holding that questions about an
alleged murder for which the defendant was never convicted were improper).  After reviewing the medical examiner=s testimony, however, we conclude that the prosecutor=s question was supported by the evidence.

Although the medical examiner
did not use the words Ahead torn
off@ to describe Salas=s neck injury, he did state that the force of the accident severed
Salas=s spinal cord and vertebral arteries and caused Salas=s skull to detach from her spinal cord.  The fact that the skin and muscles on Salas=s neck remained intact did not diminish the seriousness of the
injury.  The prosecutor=s question was designed to uncover whether appellant=s sister understood the grave nature of Salas=s injuries.  Because the
question was grounded in the record, the trial court did not err by overruling
appellant=s trial counsel=s objection to it.  Accordingly,
we overrule appellant=s seventh
issue.

In his eighth issue,
appellant contends that the trial court erred by overruling his objection to the
prosecutor=s argument
that appellant had a blood alcohol level of .28 at 3:30 p.m.








During her closing argument,
the prosecutor said, AIt=s 3:30 in the afternoon.  That
goes back to judgment.  What are you
doing at .28 at that early in the afternoon?@  Appellant=s trial counsel objected on the grounds that the prosecutor misstated
the evidence, and the trial court overruled the objection.  

The purpose of closing
argument is to facilitate the jury's proper analysis of the evidence presented
at trial so that it may arrive at a just and reasonable conclusion based on the
admitted evidence alone.  See Campbell
v. State, 610 S.W.2d 754, 756 (Tex. Crim. App. [Panel Op.] 1980); Coggeshall
v. State,  961 S.W.2d 639, 642 (Tex.
App.CFort Worth 1998, pet. ref=d).  To be permissible, jury
argument must fall within one of the following four general areas: (1)
summation of the evidence; (2) reasonable deduction from the evidence; (3)
answer to opposing counsel's argument; or (4) plea for law enforcement. See
Felder v. State, 848 S.W.2d 85, 94‑95 (Tex. Crim. App. 1992), cert.
denied, 510 U.S. 829 (1993); Coggeshall, 961 S.W.2d at 642.








The State concedes that the
prosecutor misstated the evidence. 
Because a misstatement of the evidence is not a proper subject for jury
argument, we must decide whether the prosecutor=s misstatement affected appellant=s substantial rights.  See
United States v. Apodaca, 666 F.2d 89, 97 (5th Cir.), cert. denied,
459 U.S. 823 (1982); Coggeshall, 961 S.W.2d at 643 (both holding that
improper prosecutorial comments and misstatements are not constitutional in
nature but can affect a defendant's substantial rights).  A substantial right is affected when the
error had a substantial and injurious effect or influence in determining the
jury's verdict.  Tex. R. App. P. 44.2(b); King v. State, 953 S.W.2d
266, 271 (Tex. Crim. App. 1997); Coggeshall, 961 S.W.2d at 643.

In this case, the prosecutor=s first statement after the trial court overruled appellant=s objection was, AWell, at 4:30 we know for a fact he was .28, don=t we?@  This statement acknowledged that her prior
statement was not, in fact, a fact. 
Moreover, the prosecutor correctly stated that appellant=s blood alcohol level was .28 at 4:30 p.m. at least three more times
during her closing argument. 

Because the prosecutor
de-emphasized her misstatement and repeated the true time at which appellant=s blood alcohol level was .28 several times, and because Fondren
testified that it was impossible to calculate appellant=s blood alcohol level at 3:30 p.m. but that appellant would had to
have consumed nine to eleven beers shortly before then to have a .28 blood
alcohol level at 4:30 p.m., we conclude that the prosecutor=s misstatement of the evidence did not affect appellant=s substantial rights.  We
overrule appellant=s eighth
issue.








Having overruled all of
appellant=s issues, we
affirm the trial court=s judgment.

JOHN CAYCE

CHIEF JUSTICE

 

PANEL
A:   CAYCE, C.J.; WALKER, J.; and SAM J.
DAY, J. (Retired, Sitting by Assignment).

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
November 17, 2005











[1]See Tex. R. App. P. 47.4.





[2]Officer
Cloud testified that appellant had bloodshot eyes and slurred speech and had
difficulty standing without stumbling over. 





[3]See Tex. Transp. Code Ann. ''
544.010, 545.153 (Vernon 1999) (governing vehicle driver=s
duty to observe Astop@ and Ayield@
signs).





[4]Because
there is no significance in the difference between the Eighth Amendment and
article I, section 13 of the Texas Constitution, see Cantu v. State,
939 S.W.2d 627, 645 (Tex. Crim. App.), cert. denied, 522 U.S. 994
(1997), we address these issues together.





[5]The
version of section 12.44(a) in effect at the time appellant committed the
burglary allowed a trial court to punish a defendant convicted of a
third-degree felony by imposing the confinement permissible for a Class A
misdemeanor.  See Act of May 28,
1989, 71st Leg., R.S., ch. 785, ' 4.02, 1989 Tex. Gen. Laws
3471, 3491.  Although the legislature
amended section 12.44(a) in 1995 to change the category of the reducible
offense from a third-degree felony to a state jail felony, appellant=s
punishment for the burglary offense is governed by the law in effect when that
offense was committed.  See Act of
May 28, 1995, 74th Leg., R.S., ch. 318, '' 3, 84, 1995 Tex. Gen. Laws
2734, 2735, 2763 (amended 2005) (current version at Tex. Penal Code Ann. ' 12.44(a) (Vernon Supp.
2005)).





[6]The
Eighth Amendment=s
prohibition against cruel and unusual punishment is applicable to the States
through the Fourteenth Amendment. Roper v. Simmons, __ U.S. __, 125 S.
Ct. 1183, 1190 (2005).





[7]We
are unpersuaded by appellant=s argument that the trial
court=s
reduction of his sentence for the burglary offense to that for a Class A
misdemeanor Asuggests
[the court=s]
recognition@ that
the burglary was more properly classified as a misdemeanor.  As we have discussed, the Class A misdemeanor
punishment range was within the range set by the legislature for this
offense.  See supra n.5.





[8]A
person is intoxicated for purposes of the DWI statute if he has an alcohol concentration
of .08 or more.  Tex. Penal Code Ann. ' 49.01(2)(B) (Vernon 2003).





[9]Fondren
testified that, due to individual differences, some 150-pound males would
require nine beers while others would require eleven.